· THE PEOPLE *v.* McCUMBER *et al.*

An answer denying a material allegation in the complaint may be stricken cut as sham, although duly verified.

An answer, the falsity of which is apparent, is sham, irrespective of its form as affirmative or negative, or its scope as assuming to put in issue the whole or a part of the material allegations in the complaint.

A motion to strike out one of several defences as sham may be united with an application for judgment, on account of the frivolousness of the other defences, under § 247 of the Code.

APPEAL from the Supreme Court. The complaint states that on the 18th of April, 1857, " The Chemung County. Bank," located at Horseheads, was designated by the canal board, according to the statute, to receive the deposits of canal tolls collected at that place; that on the 27th of April, 1857, the said bank, by its president, William T. Hastings, and its cashier, entered into a contract with the plaintiff, a copy of which is annexed to the complaint; that on the day last aforesaid, the defendant, in pursuance of the statute, executed and delivered to the plaintiff their bond, whereby they agreed with the plaintiff that the said bank should well and faithfully perform said contract on its part and account for and pay over all money deposited, or for which it should in any way become liable in and by said contract; a copy of which bond is also annexed to the complaint. It is then alleged that the bank has failed in the performance of the contract, in not accounting for and paying over all moneys deposited in said bank; that there was due to the plaintiff from the bank, on the first day of October, 1857, and still remained due, $8,194.62 of moneys collected for canal tolls at Horseheads, deposited in said bank, including interest.

The complaint was verified by the auditor of the canal department the 16th of November, 1857.

The contract annexed to the complaint recites, that the canal board has designated the bank to receive all of the deposits of canal moneys collected at Horseheads, and has prescribed the terms and conditions of making said deposits, which terms and conditions are stated at length. Among the terms are, that the bank should, at the close of every month, transmit to the auditor of the canal department an account current between the bank and the treasurer of the state, in respect to said deposits received during the month:

The People *v.* McCumber.

that the bank should at all times answer, upon sight, the drafts of the treasurer for all or any part of the deposits in hand ; such drafts not to be made until after twenty-four days from the end of the month in which the moneys drawn for were collected.

The defendants, for their first defence, deny any knowledge or information sufficient to form a belief that the canal board designated the so-called Chemung County Bank to receive the deposits of canal tolls collected at Horseheads according to the statute, save as in the answer subsequently stated.˙ They admit that the so-called bank entered into the contract, but say it was, as they are informed and believe, under the circumstances afterwards in the answer mentioned. They also admit the execution of the bond. But they deny that they delivered the same to the plaintiff, otherwise than by leaving the same with William T. Hastings, in the complaint named, at or about the time of its execution. They further deny any knowledge or information sufficient to form a belief that the bond was executed or delivered in pursuance of any statute ; and say it was made under the circumstances in the answer afterwards mentioned, as they are informed and believe. They admit the bank has not paid over all the toll moneys deposited, &c. ; but they deny any knowledge. or information sufficient to form a belief that the bank has not rendered an account of all the moneys deposited, or has become liable to the plaintiff to pay or account for any or all the moneys so deposited, or that there was due to the plaintiff from the bank,. at the time in that behalf mentioned, .the sum stated in the complaint, or any sum whatever, under said contract; or that the defendants are liable to the plaintiff for said sum, or any part thereof, under the contract.

The defendants also deny any knowledge or information sufficient to form a belief that the so-called bank has refused or neglected to answer upon sight the drafts of the trea-

surer, made and presented under the terms and conditions of the agreement.

For a second defence the defendants say they are advised, informed and believe that at the time of the making and delivery of the agreement, there did not exist, in law or fact, any bank or corporation known or called The Chemung County Bank, at Horseheads or elsewhere, wherefore they insist there was not any valid agreement between the plaintiff and the supposed Chemung County Bank, as in the complaint averred.

For a third defence the defendants aver that the canal board had no power to designate other than banking associations to receive deposits of canal tolls; that the said William T. Hastings was an individual banker, doing business as such under the name of the Chemung County Bank; that there was no banking association, corporation or bank of that name; that the designation of the Chemung County Bank to receive the deposits of canal tolls was contrary to law; and that therefore the contract and bond in question are void.

The answer was duly verified by two of the defendants.

At a special term of the Supreme Court at Albany, in January, 1858, a motion was made, upon notice, for an order that the answer be stricken out as sham, frivolous and irrelevant, and that judgment be given for the plaintiff, with costs; and for further or other relief. This motion was founded on the pleadings: an affidavit of the auditor of the canal department: a draft of the state treasurer on the cashier of the bank, dated September 5, 1857, for $4,770.13, and a certificate of a notary public of demand of payment on the tenth of that month, of refusal and protest and notice of protest. The affidavit of the auditor states that, on the 5th of September, 1857, the Chemung County Bank, designated as a depositary of the canal tolls collected at Horseheads, as set forth in the complaint, was indebted to the plaintiff in the sum of $4,770.13, being money

The People v. McCumber.

deposited in that bank on account of canal tolls collected at Horseheads; that the treasurer drew said draft and caused the same to be presented, when payment was refused, and the same was protested as stated in the notary's certificate; that the draft is wholly unpaid; that the bank is unable to pay and is wholly insolvent, and does not do any business, as the deponent is informed and believes; and that there was due from the bank, on the first day of October, 1857, and remained due, the sum of $8,194.62 of moneys collected for canal tolls at Horseheads, deposited in said bank, including interest.

In opposition to the motion, an affidavit of one of the attorneys of the defendants was read, to the effect that he is advised of the facts constituting the defence, that the answer was put in in good faith, and upon the advice of the deponent and his partners, after a statement and examination of the whole case; that the defendants have a good and substantial defence on the merits, and that the matters in the answer constitute a defence.

The conclusion of the opinion of the court on the decision of the motion was, that the several denials and allegations constituting the first defence should be struck out as sham or irrelevant; and that the remaining defences should be overruled as frivolous, and that judgment should be given for the plaintiff thereon.

An order was entered on the decision as follows: That the first defence set out in the answer in this action be stricken out as sham and irrelevant; that the second and third defences set out in the answer be stricken out as frivolous, and that the plaintiff have judgment for the amount claimed in the complaint, unless the defendants, within ten days after service of a copy of the order, serve an amended answer.

This order was affirmed on appeal, at a general term in the third district, and, the time for amending having elapsed,

judgment final was ordered for the plaintiff. The defendants appealed to this court.

*Amasa J. Parker*, for the appellants.

*Lyman Tremain*, for the respondent.

STRONG, J. This appeal brings up for review only the order made upon special motion, no other questions than those involved in the order having been raised or actually determined in the court below.

The order strikes out the several defences in the answer— the first as sham and irrelevant, the second and third as frivolous—and directs that the plaintiffs have judgment for the amount claimed in the complaint.

The first defence consists of denials of knowledge or information sufficient to form a belief as to several matters alleged in the complaint, and of a single matter not alleged ; and a qualified denial in direct terms of another allegation in the complaint.

Several of these denials relate to mere conclusions of law, not traversable and immaterial matter ; and all the other denials are manifestly false. The falsity of every denial respecting a material allegation is made entirely clear by other parts of the answer and the affidavit of the auditor used for the motion ; and no affidavit of the defendants was produced on the motion to explain or sustain the truth of the defence.

This defence, so far as it applies to anything material, is a sham defence beyond all question, if any defence simply controverting, in the form allowed by the Code, material statements in a complaint can be so ; and so far as it relates to what is not issuable or immaterial, it is obviously irrelevant.

A defence is sham, in the legal meaning of that term, which is so clearly false in fact that it does not in reality involve

any matter of substantial litigation.  The chief characteristic of a sham defence is its undoubled falsity.  Such a mere formal defence is sometimes designated as a false defence.  The words "sham" and " false," applied to such a defence, signify the same thing.  By a general rule of the Supreme Court, adopted in 1837, it was declared that " false and frivolous pleas will be struck out on motion, with costs."  (Rule 86.) This rule was continued down to the time of the enactment of the Code.  It is embodied in the rules established by the court in 1847. (Rule 79.)  The word "sham" imports precisely the same as the word " false" in the rule.  Neither term necessarily includes the idea of an artful construction of the plea, or doubt as to the legal character of the defence, upon its face.  The defence may be entirely clear in form, but nevertheless sham, for the sole reason that it is false. (*Brewster* v. *Bostwick,* 6 *Cow.,* 34, *and cases there cited; Oakley* v. *Devoe,* 12 *Wend.,* 196 ; *Broome County Bank* v. *Lewis,* 18 *Wend.,* 565.)  Irrelevancy in an answer, in analogy to impertinence in an answer in Chancery under our former judicial system, may consist in statements which are not material to the decision of the case; such as do not form or tender any material issue.  (*Woods* v. *Morrell,* 1 *John. Ch. R.,* 103.) Matter in defence, to be pertinent and relevant, must relate to allegations of fact in the complaint essential to the cause of action.

But it is strenuously insisted that a defence merely controverting a material allegation in the complaint cannot be sham, and the practice of the Supreme Court on the subject of sham defences, under the former system of pleading and practice, is confidently referred to in support of the position. Before the Code, that court possessed, as part of its common law powers, a supervision and control over the forms of pleading to prevent the perversion and abuse of those forms to purposes of mere delay and injustice.  This authority was often exercised from the earliest period, in striking out false or sham pleas and scandalous, irrelevant

and redundant matter; and in pursuance of that authority the general rule above referred to was adopted and extensively applied in practice. It was not, however, deemed proper by the court, before or after the adoption of that general rule, to go so far in the exercise of that power as to strike out the general issue; and hence it was established, as an exception to the doctrine in reference to striking out pleas as false or sham, that the general issue would not be stricken out for such a cause. This exception was entirely a matter of sound legal discretion in the court; it did not arise from a want of power to strike out the general issue, in like manner as any other plea, when it was sought to make it an instrument of mere wrong and vexation, nor did it spring from the idea that the general issue was not capable of the essential elements and features of a sham pleading. The wisdom of this exception is not very apparent; and I can perceive no good reason for it beyond the difficulty, in most cases, from the comprehensive scope of the general issue, in establishing satisfactorily its falsity. That plea, under the old system, was generally not only a denial in a short form of all that was material in the declaration, thereby putting the plaintiff to the proof of his cause of action, but it included many affirmative defences which were admissible in evidence under it. The reason sometimes stated for the exception was, that the defendant had a right to put the plaintiff to the proof of his cause of action, in all cases, whether the former had any defence or not (*Broome County Bank* v. *Lewis*, 18 *Wend.*, 565; *Mier* v. *Cartledge*, 8 *Barb.*, 75); but I know of no better right to obstruct the plaintiff in the enforcement of an honest demand to which there is no defence, by the general issue, than by a special plea. The former might be — as easily at least as the latter, and was oftener in practice — made the means of dishonestly postponing the collection of a just demand, and thereby working injury to a plaintiff. The evil of false pleas of the general issue was severely felt, and remedies were attempted — as by

requiring an affidavit of merits to prevent a cause being moved out of its order on the calendar at the circuit or an inquest; and by the act of 1840 providing for a verification of pleas in certain cases, and the rules of the Supreme Court thereon. (22 *Wend.*, 644.) It was doubtless the delay, expense and injustice to which this plea of the general issue was so frequently perverted, which contributed as much as any other single cause to the new system of pleading and practice introduced by the Code.

Whatever may have been the reason, under the old system, for limiting the exercise of the power to strike out false or sham pleas to those presenting affirmative defences, it has no application, under the new, to defences in denial of the complaint, or of material portions of it, or denying any knowledge or information thereof sufficient to form a belief. Such denials simply put in issue the allegations to which they relate; and they may be false or sham, and abused for improper purposes, as well as a defence of any other character. One leading policy of the new system is, to suppress falsehood and secure truth in the pleadings; and for that purpose, among others, all the forms of pleadings theretofore existing are abolished and other simple forms prescribed. For the same purpose provision is made whereby a plaintiff, by verifying his complaint by affidavit, may require a similar verification of the answer by the defendant. Allegations not controverted are to be taken as true, and an ample remedy is afforded for a departure from the truth in an answer, by providing that " sham and irrelevant answers and defences may be stricken out on motion, and upon such terms as the court may in their discretion impose." A limitation of this section by the courts to affirmative answers and defences would, to a great extent, frustrate the policy referred to, and allow of great abuses in pleading, and improper and injurious delays of justice.

It is further objected that the answer being duly verified, it was erroneous to strike out the first defence as sham:

but the Code makes no distinction, on the subject of striking out, between answers which are and those which are not verified, and there is none in principle. If an answer clearly appears to be sham, the spirit of the Code in relation to pleadings requires it should be stricken out, notwithstanding it has been verified in the usual form. Cases may and do frequently arise where the proof of the falsity of a verified answer is so strong that the answer should not be allowed to stand, without a special affidavit stating the particular matters relied on in the support of it.

Another objection to the order in respect to the first defence is, that the defendant was entitled to have the material issues formed by the defence, tried by a jury, and that it could not lawfully be tried against his consent on *ex parte* affidavits. This objection, if available in this case, might equally be made to orders striking out affirmative defences forming material issues, and would be fatal to the section above mentioned of the Code, and the entire practice as to striking out false or sham answers. The true answer to the objection is, that the right of the defendant to a trial by jury depended upon there being a real issue to be tried; that the court had power to determine whether there was such an issue, or whether the apparent issue was fictitious and sham, not to try the issue if there was not one in truth as well as in form; and that the order decides, on most satisfactory proof supporting it, that the defence was destitute of truth and substance, and presented no real issue. Such an authority over the pleadings is of the same nature with the power to require a verification of the pleadings as a condition of their admissibility. If the court may refuse to allow an answer, unless first verified, it may strike out an answer after it has been made, unless the defendant will verify it. So it may, on apparent proof of the falsity of a verified answer, strike it out, unless further verified in a more special and particular manner. The exercise of this power, in either case, is not a trial of an

The People *v.* McCumber.

issue; nor more so in one case than in the other. It is an indispensable power to the protection and maintenance of the character of the court, and the proper administration of justice.

This power should be carefully exercised, and not extended beyond its just limits, as above mentioned. It is a power simply to inquire whether there is in fact any question to be tried, and if there is not, but the defence is a plain fiction, to strike out the fictitious defence. When a defendant, on a motion to strike out his defence as sham, supports it by an affidavit stating specially the grounds of it, he cannot, as a general rule, be deprived of the benefit of a trial of it in the ordinary mode : a case for striking out does not exist.

It cannot now be objected for the first time, that the complaint should have alleged that the drafts were made for the moneys deposited after the moneys became due and subject to drafts according to the terms of the deposits; and besides, upon the statements in the complaint, the plaintiff had a cause of action, under the last clause of the bond, for the amount recovered.

The second and third defences are, in substance, that the canal board could not lawfully designate an individual banker, by the name which he has adopted to designate his funds and business, to receive canal tolls and take security for his accounting and paying over to the state the moneys received. The question raised by these defences is of no importance and wholly frivolous in regard to this case, if, whatever view might be taken of it, the state might, without further legislation, enforce the security by action. That the state might, under the authority of existing laws, maintain an action on the security is, I think, very clear. Assuming that the canal board had no authority to make the designation, it was not expressly prohibited by law, and the board merely exceeded its powers. The security was at most only voidable at the election of the state; it was not subject to be impeached by the defendants. The act of the board

was not illegal as a criminal violation of duty, and the case is not within the terms, reason or spirit of the general rule making void all transactions prohibited by law. (*State of New York* v. *The City of Buffalo*, 2 *Hill*, 434.)

But, although the two defences were frivolous, they could not properly be stricken out on that ground. Entire defences, unless sham or irrelevant, cannot be thus disposed of. The remedy provided by the Code for such a case is by demurrer or a motion, under section 247, for judgment on the complaint and answer, on account of the frivolousness of the latter. It was the remedy given by that section the court below, at special term, designed to apply, as appears by the opinion on the decision of the motion. The clause of the order striking out the last two defences arose doubtless from some mistake, but it has worked no prejudice.

There does not appear to be any good objection to uniting in a single motion an application to have one or more defences stricken out as sham, and an application for judgment on remaining defences as frivolous. The practice is calculated to save expense and delay; it can work no embarrassment or injustice, and I think it should be not only allowed but encouraged.

Having now considered all the questions in the case, the conclusion is that the order under review should be modified, by allowing the second and third defences to remain in the answer, and overruling the same as frivolous; and that otherwise the order and judgment in the action be affirmed, with costs.

All the judges concurred, except that DENIO and HARRIS, Js., dissented from so much of the opinion as affirms the power to strike out an averment controverting a material allegation in the complaint, and put their judgment on the ground that the first defence incorporating, by reference, other statements of the answer put nothing material in issue, and the others were frivolous.

Ordered accordingly.