LEVY FISHER, Admr. *vs.* SUN UNDERWRITERS INSURANCE COMPANY OF NEW YORK.

LEVY FISHER, Admr. *vs.* THE EAGLE STAR & BRITISH DOMINIONS INSURANCE CO., LTD.

JUNE 18, 1935.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker, and Condon, JJ.

CAPOTOSTO, J. These two cases are before this court upon exceptions taken by the plaintiff to the decision of the superior court denying the plaintiff's motion for summary judgment. By writs dated June 27, 1934, the plaintiff brought two actions of assumpsit on two fire insurance policies to recover in each case the sum of $1,358.59. The policies, bearing date of February 23, 1934, are of the standard form prescribed by chapter 258, G. L. 1923, and insured the plaintiff's intestate from March 1, 1934, to March 1, 1935, "against all direct loss or damage by fire."

Each declaration sets forth that while the policy was in force a fire occurred, causing property damage of which the defendant had proper notice; that the plaintiff, upon the death of the insured, Albert Fisher, was appointed admin-

istrator of his estate and that as he has "performed all the terms and undertakings on his part to be kept and performed and complied with the terms and conditions of said policy" the defendant became liable for the amount of the loss sustained.

In each case the plaintiff, invoking the provisions of chapter 1343, P. L. 1929, annexed to his writ an affidavit stating that the action was one founded in contract for a debt or liquidated demand in money payable by the defendant, and that in the opinion of the deponent there was no defense to the action. On July 18, 1934, the return-day of the writ, the plaintiff filed with his writ and declaration a motion for summary judgment for $1,358.59. On August 24, 1934, the defendant in each case filed a plea in abatement alleging that the insured had failed to submit an inventory, that there was a disagreement as to the amount of the loss and that no appraisal had been requested or made, as required by the policy. The defendant at the same time filed two affidavits of defense, one by the then attorney of record stating that the amount due to the plaintiff, if any, is undetermined and unliquidated and also that the "cause of the loss" is undecided, and the other, by the president of the Sun Underwriters Insurance Company in the former case and by the assistant United States manager of The Eagle Star & British Insurance Company in the latter case, setting forth that the affiant had "personal knowledge that the plaintiff has never demanded an appraisal, nor has this company ever waived the same, nor has this company ever authorized anyone to waive the same for the company." The plea in abatement in each case was heard upon motion of the plaintiff and, on October 13, 1934, was ordered stricken from the record.

On October 20, 1934, each defendant filed a plea of the general issue and six special pleas, setting out (1) that there was an increased hazard by reason of the presence of bombs and explosives on the premises in violation of the provisions of the policy; (2) that explosive substances proscribed by a

provision of the policy were kept on the premises; (3) that the loss was not caused by fire but was caused by explosion; (4) that the plaintiff failed to make an inventory after the alleged fire; (5) that there was a disagreement as to the amount of the loss and no appraisal was had although an appraisal was required; and (6) that proofs of loss were not received. On the same day the court heard and denied the plaintiff's motion for summary judgment, which action by the court is now before us for review.

At the very beginning of the hearing before us the defendant in each case firmly urged that the plaintiff's exceptions were premature and should be dismissed notwithstanding the opinion expressed in *Rosenthal* v. *Halsband*, 51 R. I. 119, where the court held that a plaintiff whose motion for summary judgment is denied may except to the decision and immediately bring a bill of exceptions to this court for a review of the decision. Although the summary judgment statute in this state (P. L. 1929, chap. 1343) is of recent origin, the practice under it is rapidly increasing and a good many such bills of exceptions by plaintiffs have been coming to this court. We, therefore, have come to the conclusion that the above contention by the defendants deserves careful consideration, even though it entails a review of the decision on this point reached by this court in the case cited. In view of this fact, we deem it advisable to give a fuller discussion of the origin and effect of the statute and the practice thereunder than the question would ordinarily justify.

In a general way, our summary judgment statute traces its origin to the English Summary Procedure on Bills of Exchange Act, 18 & 19 Vict. c. 67, passed in 1855, which was restricted in its application to bills of exchange and promissory notes. The Judicature Act of 1873 is the final step in the English reform of pleading. Among other specific provisions, it provides for expedited process in "all actions where the plaintiff seeks to recover on a debt or liquidated demand in money arising on a contract, express

or implied (as for instance on a bill of exchange, promissory note or check, or other simple contract debt)." In contract cases, the central requirement of this summary procedure is that the claim must be liquidated.

The tendency of the English decisions is to limit the operation of the summary judgment rules to simple actions for debt or on one of the counts in *indebitatus* assumpsit. *Workman-Clark & Co.* v. *Brazileno*, 1 K. B. 968, 978, (1908); *Lagos* v. *Grunwaldt*, 1 K. B. 41, (1910). They require, moreover, that the plaintiff comply strictly with the requirements of the rules, situations of doubt being resolved in favor of the defendant. This same attitude is manifest in appellate proceedings. Before 1894, the courts reluctantly entertained an appeal by the plaintiff and summarily dismissed it unless very special circumstances were shown— *Wing* v. *Thurlow*, 10 T. L. R. 151—or unless the plaintiff clearly established that there was no defense in fact. *Edwards* v. *Davis*, 4 T. L. R. 385, C. A. On the other hand, where an order was entered against a defendant the appeal was freely entertained in all instances. *Ludford* v. *Rymill*, 4 T. L. R. 693; *Ochse* v. *Duncan*, 3 T. L. R. 220. The procedure to be followed in appellate proceedings was definitely settled by the Judicature Act of 1894, which denies a plaintiff the right of appeal against orders granting the unconditional right to defend, and by the Judicature (Consolidation) Act of 1925, which allows a defendant the unrestricted right of appeal against orders refusing leave to defend.

In the United States provisions similar to the English rules have been adopted in a number of states, either by statute or by rule of court. Whenever variations are found, they are traceable to local conditions or judicial structure. An examination of the so-called summary judgment laws both in England and in this country shows that the purpose of such laws was to regulate procedure, and not to create a new right in favor of a party plaintiff. They were adopted to grant relief against procedural tactics interposed for

delay and not to substitute a new method of trial where an issue of fact exists.

At common law, although false and sham pleas could be stricken out, the general issue could not be inquired into and eliminated. A defendant had the right to plead the general issue and thereby put the plaintiff to his proof, irrespective of whether or not he actually had a defense to the claim made against him. In *People* v. *McCumber*, 18 N. Y. 315, the court, at page 323, says: "It was doubtless the delay, expense and injustice to which this plea of the general issue was so frequently perverted, which contributed as much as any other single cause to the new system of pleading and practice introduced by the Code." *Anglo Italian Bank* v. *Wells*, 38 L. T. R. 197, 199; *Jacobs* v. *Booth's Distilling Co.*, 85 L. T. R. 262; *National Metropolitan Bank* v. *Hitz*, 1 Mackey 111 (D. C.); *Cropley* v. *Vogeler*, 2 App. D. C. 28, 34; *Bolton* v. *Bolton*, 86 N. J. L. 69; *Eisele & King* v. *Raphael*, 90 N. J. L. 219.

In passing upon a motion for summary judgment the primary duty of the trial court is to determine whether there is an issue of fact to be tried. If it finds one, then it is powerless to proceed further, for such issue must then be tried by a jury unless jury trial is waived. In *Hanna* v. *Mitchell*, 202 App. Div. 504, at page 517—affirmed on memorandum in 235 N. Y. 534—the court in speaking of rule 113, which is very similar to our summary judgment statute, says: "It is not the object of this rule to deprive any one who has a right to a jury trial of an issue of fact, but to require a defendant, when it is claimed that in fact he has no honest defense and no *bona fide* issue, to show that he has at least an arguable defense, that he has not merely taken advantage of a technicality in the form of pleading for the purpose of delaying the enforcement of an honest claim to which in fact he has no colorable defense. The court does not try the issues but ascertains whether in fact there is an issue." In *Fidelity & Deposit Co.* v. *United States*, 187 U. S. 315, in discussing the constitutionality of

the New York rule, the court says: "If it were true that the rule deprived the plaintiff in error of the *right* of trial by jury, we should pronounce it void without reference to cases. But it does not do so. It prescribes the means of making an issue. The issue made as prescribed, the right of trial by jury accrues. The purpose of the rule is to preserve the court from frivolous defences and to defeat attempts to use formal pleading as means to delay the recovery of just demands." *Ex Parte Peterson,* 253 U. S. 300; *Hunt* v. *Lucas,* 99 Mass. 404.

Issue finding rather than issue determination is the pivot upon which the summary judgment laws turn. Where it is not perfectly plain that the action is within the scope of the statute or that there is no real issue to be tried, a motion for summary judgment is improper and should be denied. *Munoz & Co.* v. *Savannah Sugar Refining Corp.,* 118 Misc. 24; *Peninsular Transportation Co., Inc.* v. *Greater Britain Ins. Corp., Ltd.,* 200 App. Div. 695; *Chelsea Exchange Bank* v. *Munoz,* 202 App. Div. 702; *Sheppards & Co.* v. *Wilkinson & Jarvis,* 6 T. L. R. 13.

It was not the purpose of chapter 1343, P. L. 1929, to provide a substitute for existing methods in the trial of issues of fact or to furnish a way for the anticipatory determination of questions of law by proceedings on bills of exceptions in cases where the trial court finds an issue of fact to exist. Nor is every common law action in assumpsit within the purview of the statute. Actions in special assumpsit involving complicated facts difficult to establish by affidavits, as in the instant case, or actions in which the claim is not liquidated within the legal meaning of the term "liquidated demand in money," as is clearly apparent in the case before us, are outside the scope of the statute. In general, the remedy by summary judgment is applicable to commercial cases and to simple actions in assumpsit which may be maintained under the *indebitatus* or common counts.

A promiscuous use of the statute in any action in assumpsit, with a right in a plaintiff whose motion for summary judgment is denied to prosecute at once a bill of exceptions, will ultimately substitute one form of congestion for another and transfer litigation before decision on the merits to a court of review that should be concerned only with the determination of final issues. As the statute is a regulation of procedure and not an enactment of substantive law, the right to prosecute a bill of exceptions should exist only if a party is deprived of a right to which he is by law entitled. A plaintiff whose motion for summary judgment is denied loses no such right; for when the trial court has investigated his claim he has received the full protection of the statute. To permit him a review by this court of an adverse decision by the trial court is to grant him an extraordinary remedy where no vested right is infringed. It is otherwise if the motion for summary judgment is decided for the plaintiff. In that case, the defendant is deprived of the substantial right to present his defense in accordance with established principles of law, if he has a real defense. A decision against him will, by operation of law, lead to final judgment. Under these circumstances, a defendant is seriously aggrieved by the ruling of the court and should be entitled to prosecute a bill of exceptions in protection of his rights.

Procedure more or less in the nature of summary judgment on motion is found in Illinois, (1872), District of Columbia, (1873), Michigan, (1915) and Delaware, (1915). In New Jersey, (1912), Pennsylvania, (1915), New York, (1912) and Connecticut, (1929), the practice of summary judgment is controlled either by statute or by rules of court very similar to our chapter 1343, P. L. 1929. We find the most extensive use of this expedited procedure in New York. Decisions on the plaintiff's right to appellate proceedings immediately after a ruling denying the entry of summary judgment are difficult to find.

In *Dwan* v. *Massarene*, 199 App. Div. 872, (1912), a case which limits itself strictly to a discussion of the summary

judgment rules, the court concludes, on page 880, with the statement that if the defendant "shall show such facts as may be deemed by the judge hearing the motion sufficient to entitle him to defend, this court will not review the order, as we consider that no substantial right of the plaintiff has been violated." In 1923, the same court for the same district entertained an appeal by the plaintiff in the case of *Lee* v. *Graubard*, 205 App. Div. 344, where the question before the court was whether the summary judgment rule was applicable in an action on a contract implied in law. No issue was raised with reference to the propriety of the appeal as far as appears in the decision of the court. That same year in the case of *Hongkong & Shanghai Banking Corp.* v. *Lazard-Godchaux Co.*, 207 App. Div. 175, the plaintiff took an appeal from the denial of his motion for summary judgment in reliance "both upon section 476 of the Civil Practice Act and rule 113 (summary judgment rule) of the Rules of Civil Practice" and the court, citing *Lee* v. *Graubard, supra*, held that it would "review an order denying a motion for summary judgment where the affidavits show that the defenses and denials raise no issue." Section 476 of the Civil Practice Act permits the entry of judgment, either as to the whole or as to a part of a cause of action, "at any stage of an action or appeal, if warranted by the pleadings or the admissions of a party or parties." This case was affirmed in 239 N. Y. 610 on the facts and without any opinion or any express reference to the plaintiff's right to appeal.

On close examination, the reason for these apparently conflicting conclusions becomes clear. In the *Massarene* case, which is recognized as a leading case on the interpretation of the summary judgment rules in New York, the court confines itself strictly to an interpretation of the intent and purpose of the summary judgment procedure as a distinct and separate entity, unaffected by rules of general practice. In the two later cases, the court apparently holds that the summary judgment rules are subject

to and controlled by other provisions in the code and so allow the plaintiff's right of appeal.

The Connecticut summary judgment procedure, which was carefully considered in the light of experience with similar provisions in other jurisdictions before adoption by the courts of that state, was prepared by the Judicial Council with the assistance of the Yale Law School. In an article on The New Summary Judgment Rules, 3 Conn. Bar Journal 11, Professor Charles E. Clark of that institution says: "It is clear when the judgment is ended (apparently a misprint for 'entered') it is a final judgment from which an appeal will lie. The New York courts have held, overruling earlier decisions, that an appeal will lie from the denial of the motion. This is, however, under the New York practice which permits appeals from interlocutory rulings to a considerable extent. Under the Connecticut practice obviously the denial of the motion is not a final judgment from which appeal will lie." Our investigation in other jurisdictions has disclosed a silence in the reported cases as to the existence of the plaintiff's right to appeal, rather indicating a recognition that there is no such right.

In this state the statute relating to the review, upon a bill of exceptions of rulings or decisions by a trial court, authorizes the excepting party to prosecute a bill of exceptions only "after verdict or final decision on the merits." G. L. 1923, chap. 348, sec. 24. Our practice does not allow a bill of exceptions to the overruling of a demurrer to be brought "if the decision permits the action to proceed to a determination of issues of fact tendered by the pleadings." *Gratton* v. *Harwood*, 53 R. I. 94; and the words "final decision upon the merits," appearing in the statute, have been construed "to mean a determination upon the merits of a cause which will in due time by operation of law lead to a final judgment in the cause." *Troy* v. *Providence Journal Co.*, 43 R. I. 22. Within seven days after a decision of that nature a party aggrieved may commence his proceedings under the statute

to bring the cause to this court for review upon a bill of exceptions and he cannot do so before such a decision. *Burns* v. *Burns*, 49 R. I. 421. It is clear to us that a decision granting a motion for the entry of a summary judgment is such a decision and that a decision denying such a motion is not.

The plaintiff in the case before us properly relies on the decision in *Rosenthal* v. *Halsband*, 51 R. I. 119, to support his bill of exceptions. In that case, the court, after stating that the "defendant clearly has the right to a review in this court of a decision ordering the entry of a judgment against him if he deems himself aggrieved thereby," proceeds to say that "unless the plaintiff has the right to except to a decision of the trial court denying his motion for judgment he may be deprived of the benefits of said chapter (referring to the summary judgment statute) by an erroneous ruling of the trial court." It finds that section 24 of chapter 348 of the general laws is not applicable to proceedings under the summary judgment statute "and that either party may bring a bill of exceptions to this court to decisions of the trial court on motions for entry of judgment under the provisions thereof." We find ourselves entirely unable to agree with the reasoning, unsupported by any authority, by which this conclusion is reached.

Although the *Rosenthal* case states that chapter 1343, P. L. 1929, is a regulation of procedure, yet it proceeds to construe the statute as one of substantive law when it comes to consider the right of a plaintiff to demand an immediate review by this court of an adverse decision. The primary purpose of the statute is to assist in the prompt administration of justice through the elimination of patently false defenses and not to grant any additional right to a plaintiff when in the opinion of the trial court a triable question of fact is in issue. When a motion for summary judgment is made and the court wrongly decides against the defendant, it deprives him, by its decision, of a substantial right. It is different if the motion is wrongly decided

against the plaintiff. In such a case, while the plaintiff may have to stand the hazard of a trial and the delay incident thereto, he is not deprived of any substantial right under the law.

In the *Rosenthal* case the court says that a plaintiff may be deprived of the benefits of the statute unless he is allowed to prosecute a bill of exceptions where the decision is against him. It assumes by this statement that he is aggrieved by the ruling of the court. Mere disappointment or inconvenience to a plaintiff resulting from an adverse decision, especially where the decision is with reference to procedure and interlocutory, does not constitute him a party "aggrieved" within the legal meaning of the word. In *Tillinghast* v. *Brown University*, 24 R. I. 179, 183, the court says: "No person can be said to be 'aggrieved' by an order which, without affecting his rights of property or impairing his interest, simply facilitates the decision of the questions before the court. . . . The word 'aggrieved' refers to a substantial grievance, a denial of some personal or property right or the imposition upon a party of a burden or obligation." *Greene* v. *Willis*, 47 R. I. 251. If the plaintiff is permitted to prosecute a bill of exceptions where the decision on a motion for summary judgment is against him, the real party aggrieved is a defendant with a triable issue, for upon him is cast the extra burden of appellate proceedings before a trial on the merits. Under our well established practice, such procedure gives an undue advantage to a plaintiff by judicial legislation.

For the reasons by us stated, supported as they are by the authorities cited and by others that we have examined, and by the language of section 24 of chapter 348 of the general laws, we are constrained to hold that the plaintiff, whose motion for summary judgment was denied, cannot prosecute a bill of exceptions to such decision before a final determination of the cause on the merits. The holding in *Rosenthal* v. *Halsband, supra,* on this specific point is overruled.

Our conclusion is that the plaintiff's bill of exceptions in each of these cases is prematurely before this court. The bill of exceptions in each case, therefore, is dismissed and the cases remitted to the superior court for further proceedings.

*Max Winograd, William J. Carlos*, for plaintiff.
*Henry M. Boss*, for defendant.