Clifford PATTISON et al., Appellants,

v.

HIGHWAY INSURANCE UNDERWRITERS et al., Appellees.

No. 12982.

Court of Civil Appeals of Texas.

Galveston.

June 21, 1956.

Rehearing Denied July 12, 1956.

Wm. R. Brown, Alvin M. Owsley, Jr., Houston, Baker, Botts, Andrews & Shepherd, Houston, of counsel, for appellants.

Dyess & Dyess and A. D. Dyess, Houston, for appellees.

GANNON, Justice.

This case is here for a second time. See Pattison v. Highway Insurance Underwriters, Tex.Civ.App., 278 S.W.2d 207, being an appeal from a judgment sustaining exceptions to plaintiffs' pleadings and dismissing their suit. On the first appeal, we reversed and remanded.

The present appeal is from a summary judgment against plaintiffs and in favor of the defendants, rendered on motion and after hearing under Rule 166-A, Texas Rules of Civil Procedure. The basis of the trial court's ruling does not appear from the record.

It is conceded by defendants that the general nature of plaintiffs' case is correctly stated by appellants in their brief, as follows:

"The plaintiffs in this suit are a man who was injured, and whose wife was injured and subsequently died, in an automobile-truck collision which occurred on or about November 11, 1949, his children (who sue on account of injuries to and subsequent death of their mother), and his father (who sues as his next friend and as next friend of the minor plaintiff). The defendants are the corporation which owned and operated the truck involved in the collision, its two successor corporations, and an insurance company which carried liability insurance on the truck in question.

"Shortly after the collision, the injured plaintiff and his wife, who has since died, retained the services of an attorney. Settlement negotiations with the Houston agent of the insurance company defendant resulted in a $12,500 settlement, the parties executing the release in reliance upon representations that the trucking company was insolvent, that $10,000 was the maximum insurance coverage afforded, and that some sort of emergency clause in the policy provided for the payment of the additional $2,500. Subsequently, the plaintiffs discovered that at the crucial time the defendant trucking companies carried liability

coverage with much higher limits with the insurance company defendant, and instituted this suit, within two years following the date of the collision. The second amended original petition in this case attempts to allege, alternatively, three causes of action. The first is an ordinary personal injury negligence action against the driver and the owner of the truck involved in the collision, setting forth in addition that the settlement and release of the personal injury action was procured through fraudulent misrepresentations by the insurance company's agent concerning the amount of coverage. The petition then contains a prayer that the release be set aside for fraud in the inducement in order that the plaintiffs may proceed upon their negligence action. The second cause of action is similar to the first, except that it is alleged that the injured plaintiff lacked the mental capacity to enter into a binding contract, for which reason the releases are void. Alternatively, the petition contains an asserted fraud action, which is brought against the insurance company only, the petition alleging that as a result of the fraud practiced by the defendant insurance company the plaintiffs had been deprived of a valuable cause of action, for which reason they are entitled to damages."

The appeal is based upon a single point of error, reading as follows:

"The trial court erred in sustaining defendants' Motion for Summary Judgment and entering Judgment that plaintiffs take nothing, since there are material disputed facts in issue, and plaintiffs are entitled to a trial of their case."

The appellees challenge the sufficiency of appellants' point of error to sustain their appeal, claiming the point states an incorrect proposition of law. Appellees cite Brown County Water Improvement Dist. No. 1 v. McIntosh, Tex.Civ.App. Eastland, 1942, 164 S.W.2d 722. We do not regard appellees' challenge as sound.

It is not the office of a point of error to state propositions of law, however were such its office we are unable to agree that it appears that appellants' point states an insupportable proposition. This is apparently the real contention of appellees.

Furthermore, under the present liberal rules, whenever an appellant makes it appear that the trial court has committed error prejudicial to him, it is our duty to reverse without regard to the formal rules of briefing. See Alice Warnasch v. Wagner, Tex.Civ.App., 291 S.W.2d 389, and authorities cited.

We have concluded from our study of the briefs and the record that there is no theory of fact or of law under which it may be said it conclusively appears that plaintiffs cannot make a case to go to the jury, and that, therefore, the judgment must be reversed. This being true, we deem it inappropriate to discuss the case in detail in an anticipatory way on this appeal in advance of a full development of all the facts at a trial on the merits. The following, however, will explain our views.

It is not denied that plaintiffs can make an issue on the mental capacity of Clifford Pattison at the time he signed the releases in question. If Clifford Pattison's mental incapacity can be established, the releases are voidable and will be voided on a showing of what would otherwise be injury, if Mrs. Clifford Pattison's joinder does not bar the community existing between herself and husband.

In order to show injury, the plaintiffs may very well be under the burden of establishing valid, legally enforceable tort claims against the defendants, State Wide Truck Lines, Inc. and its driver, Donald Lewis, for sums substantially larger than that received by the Pattisons in settlement. This undoubtedly plaintiffs can do if they can show facts from which a jury would be permitted to infer negligence on the part of such defendants.

It is established that the accident occurred about 9 p. m. on the night of November 11, 1949, when Mr. and Mrs. Clifford Pattison, who were driving their automobile in a westerly direction on the Hempstead Highway just out of Houston near Fairbanks, came in violent collision with a tractor-trailer of State Wide Truck Lines, Inc., then being operated by its employee, Donald Lewis.

The record indicates evidence may and probably does exist from which a jury could infer that at the time it was unusually dark and perhaps with visibility somewhat impaired by a slight mist.

It is undisputed that the tractor-trailer was loaded with lengths of oil well pipe and that when the collision occurred the tractor-trailer was in the process of making a "U" turn, thus blocking the north or right-hand side of the highway for the direction in which the Pattisons were moving.

Plaintiffs' pleadings set up some twenty specific claims of actionable negligence on the part of defendants, including Lewis' failure to keep a proper lookout for approaching vehicles and that Lewis started the truck and trailer and brought it upon the highway when such movement could not be made with safety.

A good idea of the general nature of the collision and claims of the parties with reference thereto will be readily surmised by the imaginative from the following excerpts taken from the affidavit of Mrs. Lewis, who accompanied her husband on the occasion in question:

"My husband, Clarence Donald Lewis, was driving the truck pulling a trailer loaded with pipe that he was to deliver in the general vicinity of Fairbanks, Texas. We did not know exactly where it was to be delivered; so we had stopped at a point east of the place where the accident happened and asked directions. We were advised that we had gone too far west; so we had gone a short distance further west to where we could turn around. My husband had turned the truck so that he could come back out on the highway and head back east (we had been going west) on the Hempstead Highway. I looked both to my right and left while we were stopped before pulling out on the highway—we had come to a complete and full stop before moving out on the highway—and I noticed a light a good long distance down the highway in an easterly direction from us. It must have been at least a mile from us because it was so far that it appeared to be only one light. My husband then started to pull the truck out onto the highway and make his left turn to proceed east on the highway. We moved out onto the highway at about five (5) miles per hour, and the tractor had crossed the center line over into the south traffic lane with the right wheels on the south shoulder. The trailer was partially across the highway at an angle with the rear end extending across the center line into the north traffic lane, but not entirely across such lane. There was sufficient room for a car to have passed to the rear of our trailer without any danger. When the truck and trailer was in the position described above, this automobile ran into the left side of the trailer just in front of the trailer wheels with a terrific impact. The impact broke the coupling pole on the pole trailer and sort of straightened the trailer out across the highway. I believe that the light that I had seen down the highway east of us prior to our pulling out on the highway, was the lights from the automobile that actually struck our trailer; but at the time I first saw the light, it was so far that I could not tell for sure whether it was a light from a car or something else. I would estimate the speed of this car to have been at least 70 miles per hour, and quite possibly more as it came up to the truck."

It is shown that Mr. and Mrs. Pattison suffered a complete loss of memory of the collision—no doubt from head concussion

injuries received in it—and that neither has ever been or can be. in a position to give testimony in respect to the occurrence.

Apparently it is also true that Mr. and Mrs. Lewis are the only available eye-witnesses to the accident and that their testimony, if believed by a jury in its entirety, would tend to establish the contributory negligence of the Pattisons and the want of any primary negligence on the part of Lewis and his employer on the occasion in question.

Nevertheless, in our opinion, it is entirely possible that on a full trial from the testimony of Mr. and Mrs. Lewis on cross-examination, if called as adverse witnesses, and that of the investigating officers, the physical facts, etc., the plaintiffs *may* be able to raise questions of fact on all negligence issues affecting liability. So far there is only the testimony of the Lewises on discovery depositions and affidavits of other witnesses.

We are unable to hold that the record shows conclusively it will be impossible for plaintiffs, on a full hearing, to make issues to go to the jury on the actionable negligence of defendants, State Wide Truck Lines, Inc. and Donald Lewis, its driver. We feel somewhat fortified in this view by the following statement of appellees' counsel in presenting the motion for summary judgment in the trial court:

"Now, your Honor, I want to discuss several points, and I am going to say this to you, that I recognize that if this man were insane, and by that I mean lack of mental capacity to effect a release, and nobody else had acted for him with authority to act for him, and I refer to his wife, the situation existed there at that time, you shouldn't grant this motion at all."

At the time of the settlement the claims were community assets. Defendants say that since there is no claim that Mrs. Pattison was mentally incompetent when she signed the releases along with her husband, her signature alone binds the community and its successors, the claimants here. This is based on the legal proposition that if in fact Mr. Pattison was mentally incompetent when the settlement was made, and the community was in necessitous condition and the moneys received from the settlement were used to pay for necessaries, then Mrs. Pattison was authorized to act for the community. Defendants cite Magnolia Petroleum Co. v. Still, Tex. Civ.App. Texarkana, 1942, 163 S.W.2d 268, writ refused, and like cases.

These authorities involve transactions free of all overreaching and from which the community received full and fair value for the conveyances in which the wife joined a mentally incompetent husband and are to be distinguished from the present transaction perhaps on that basis alone. However, in any event we regard the authorities as factually inapplicable to the record before us. Here there is no proof of any emergency requiring the wife to execute the releases to raise funds to obtain or pay for necessaries. All the record shows is that the settlement funds were used to "reimburse" Mr. Pattison's relatives for *"donations"* made by them toward the hospital and medical expense incurred by Mr. and Mrs. Pattison as a result of the injuries received by them in the collision.

It would unduly extend this opinion to develop all the details from the record, but we feel also that there is ample proof in the record to support a finding that Mrs. Pattison's signature was induced directly or indirectly in substantial part by false representations chargeable to the defendants. And further, that should it be found on a full hearing that Clifford Pattison was mentally competent when he signed the releases, the proof would support findings that the false representations claimed by plaintiffs to have been made by defendants' agent to induce the settlement were in fact made and that these representations directly or indirectly induced Clifford Pattison to make the settlement which he did.

■ In reaching our conclusions, we have not been unmindful that as originally introduced into the common-law system, summary proceedings were not available in cases such as the present which turn largely on parol evidence and inferences to be drawn therefrom; and that such cases in their very nature tend, in justice to all parties, to require the full development of all the facts on a jury trial, including examination in court of all available witnesses, whether friendly, impartial, or adverse. We do not believe it to be the purpose of the present rule "to provide a substitute for *existing methods in the trial of issues of fact* or to furnish a way for the *anticipatory determination of questions of law*". Fisher v. Sun Underwriters Ins. Co., 1935, 55 R.I. 175, 179 A. 702, 705, 103 A.L.R. 1097. (Emphasis supplied.)

The Supreme Court has announced as a general rule, "that if a motion involves the credibility of affiants or deponents, or the weight of the showings or, it is said, a mere ground of inference, the motion will not be granted." See Gulbenkian v. Penn, 1952, 151 Tex. 412, 252 S.W.2d 929, 931, where the Court quotes with approval statements from courts of civil appeals to the effect that summary procedure is not intended to deprive litigants of their right to a " '*full hearing on the merits* of any real issue of fact' " and that " '*All doubts* as to the *existence* of a genuine issue as to a material fact' " must be resolved against the motion. (Emphasis supplied.)

Courts of civil appeals—see Loud v. Sears, Roebuck & Co., Tex.Civ.App. Dallas, 1953, 262 S.W.2d 548—have declared that the summary judgment practice is to be exercised with great caution since litigants are entitled to a *final trial* where there is the *slightest doubt* as to the facts.

■ The cases make it plain that in summary proceedings the burden rests heavily upon the moving party to negative *conclusively* the existence of a genuine issue in regard to some *controlling fact* entitling the movant to judgment. And that where it appears that such an issue "may exist", summary relief is to be denied without regard to informalities or defects in the resisting party's showing. See Felker Lumber Co. v. Superior Insurance Co., Tex.Civ.App. Texarkana, 1954, 272 S.W.2d 161.

Summary relief is purely procedural. Its denial does not involve a denial of substantive rights. In the light of the provisions of the Bill of Rights guaranteeing that the courts shall at all times be open to all citizens, with right of trial by jury, for injuries done them in their lands, goods, person, or reputation, it is quite understandable why, in summary proceedings, the moving party is required to support his position by a conclusive showing.

■ Appellees say that the law firm of Combs, Brown & Brock, which the proof developed was the assignee of a present interest in the claims of Mr. and Mrs. Clifford Pattison, was a necessary party to the proceeding and that since this firm was not in any wise joined in the suit, either as plaintiffs or defendants, "the suit should abate and/or be dismissed with prejudice." We overrule the point. We know of no principle of law under which a want of necessary parties would entitle defendants to a judgment on the merits.

Reversed and remanded.