**FIRST STATE BANK OF MONAHANS,**
Texas, Appellant,

v.

James A. HENDERSON, Appellee.

No. 5628.

Court of Civil Appeals of Texas.

El Paso.

Feb. 19, 1964.

Tom L. White, Monahans, for appellant.

W. F. Leigh, Pecos, for appellee.

FRASER, Chief Justice.

This is an appeal from a summary judgment rendered by the trial court in favor of the plaintiff-appellee and against the defendant Bank. Plaintiff's position is that the Bank wrongfully honored and paid a check in the sum of $4,200.00 made payable to one Worsham. He maintains that the Bank was at fault in honoring the check because it was not countersigned by plaintiff. Said check is not included in the record.

The transcript and the record as a whole reveal that the plaintiff, in addition to his petition, filed two affidavits in support of his motion for summary judgment. Included in the record are plaintiff's request for admission of facts and the Bank's answers thereto. The defendant Bank sent up its original answer, its amended original answer, and its answer to plaintiff's motion for summary judgment to which is attached an affidavit by one Archer, president of Tumbleweed Designs, Inc. Defendant also included copies of alleged contracts between Tumbleweed, plaintiff, and Worsham. The plaintiff urged, and the trial court held, that the defendant Bank's pleadings and documents and exhibits showed an absence of genuine issue of any material fact, and further that the Archer affidavit was in-

sufficient as a matter of law. The court rendered judgment against the defendant Bank in the sum of $4,149.44.

The matter appears to have arisen in the following manner: a corporation, known as Tumbleweed Designs, Inc., was in existence at Monahans, Texas, its president being A. R. Archer, Jr., the maker of one of the proffered affidavits in the record. It seems that this corporation desired to improve its financial picture, and made an agreement with plaintiff under which plaintiff would deposit the sum of $10,000.00 in the defendant Bank to the credit of Tumbleweed Designs, Inc., this to be done with the understanding that the plaintiff would not draw any of this money out for himself for a period of thirty days. It was further agreed that Tumbleweed was to have the use of this money for sixty days, with the exception of such amounts as plaintiff might withdraw after the first thirty days had expired. It is not contradicted that Tumbleweed wished to have this money in its bank account in order to help acquire a loan of some $75,000.00 from another source. Plaintiff alleges that it was agreed that Tumbleweed could not draw on its account after the deposit of the $10,000 except on a check executed by the corporation and countersigned by the plaintiff, and that a new signature card to that effect had been executed. The check in question here was not countersigned by the plaintiff. It is apparent from the record that prior to the deposit of this $10,000, Tumbleweed corporation did have a bank account and a signature card on file with the defendant Bank. It is alleged that the new signature card was made out by plaintiff, Archer, and a Mrs. Walsh, a representative of the Bank, but there is some confusion between the parties as to the date this was accomplished.

Now it must be remembered that the judgment of the trial court recites that defendant Bank failed to successfully controvert plaintiff's motion for summary judgment, and failed to indicate that there existed a material fact question.

■ Our study of the record impels us to believe that there are questions of fact that need to be determined before this controversy can be properly adjudicated. For example, the Bank maintains that the new signature card (which was intended to replace and cancel the one under which Tumbleweed Designs, Inc., had been operating) was inadequate and legally insufficient; this because, according to the Bank, Tumbleweed had been enjoying the valid right to write its own checks; the new signature card, according to defendant, lacked one required signature; and said signature card did not show (nor does the record show) that the new card, replacing the old one, was drawn up with proper corporate authority. Defendant therefore urges that it had a right and obligation to continue paying checks on the authority of the original Tumbleweed corporation card. The defendant points out provisions of the Business Corporation Act with regard to corporate obligations and powers, and further states that there is no evidence in the record that Archer was a director; the Bank thereby taking the position that the original card allowing Tumbleweed to draw its money out in its own way had not been superseded or canceled because the new card was inadequate, insufficient, and lacked corporate authority; and that therefore the Bank had the right and the obligation either to continue paying on the basis of the original card, or at least not to pay out any money until a proper signature card had been executed. This appears to us to be an important fact. The money was deposited by plaintiff in the Tumbleweed corporation account, and unless there was an adequate and legal change, Tumbleweed still retained the power to write checks as it had been doing previously. We cannot pass upon whether or not the new signature card has enough signatures because neither the card nor a copy thereof is in the record, and it is not known what is on said card other than assertions in the affidavit of plaintiff and defendant's answers to request for admissions. Furthermore, there are no documents in the record showing corporate

authority with reference to the new signature card.

Plaintiff alleges in his affidavit that the check in question was written and cashed some time during the month of February, 1962, but he does not indicate how he knows this to be true or how such fact can be substantiated; and—as heretofore stated—neither the check nor a photostatic copy thereof is included in the record. If the signature card which was alleged to have been executed on the 24th day of January, 1962 was valid, then the date of the cashing of the check would be not only important, but vital. The only information we have is that plaintiff says in his affidavit that it was cashed in February. There is further confusion because plaintiff, by his interrogatories, asked the Bank to admit that the $10,000 deposit was made on or about January 10th. The Bank replied that it was made on or about the 22nd day of January, 1962. The same is true about the date of the new signature card, which the Bank denied was made on the 10th day of January, 1962, but stated was actually executed on the 24th day of January, 1962. If this check was written and cashed before January 24th (the alleged date of the execution of the new signature card), then plaintiff would have no cause of action, because up until that time the Bank was honoring checks on the original corporate signature card of Tumbleweed Designs, Inc. In other words, the date of the cashing of the check is very important because, if the new signature card was improper, insufficient, or executed after the check in question was cashed, defendant Bank would likely not be liable.

Plaintiff, in his affidavit, states that there was an agreement about the placing of the $10,000 in Tumbleweed's account, and that such agreement was made between plaintiff, Archer (President of Tumbleweed), and Mrs. Walsh, an admitted representative of the Bank, and apparently urges that the agreement was made simultaneously with the deposit of the money. There is no deposition and no testimony from the Bank representative on this particular phase of the matter, and we are therefore again confined to the statement in plaintiff's affidavit.

In examining the Bank's answers to the interrogatories submitted to it by plaintiff, the Bank, under question and answer No. 24, says that it is not true that it honored checks subsequent to January 10, 1962 knowing that James A. Henderson had to countersign the same. The Bank also says, in answer No. 26, that it is not true that it knowingly and willfully allowed Tumbleweed Designs, Inc., to write such checks without such signature. In answer No. 27 it says that it is not true that said defendant negligently allowed and permitted Tumbleweed Designs, Inc. to write such checks on said account (meaning thereby checks not countersigned by plaintiff). And in answer No. 28 the Bank says that it knowingly and willfully honored and paid checks on the Tumbleweed account without the signature of plaintiff. Defendant urges that, by these answers, it is evident that defendant Bank did not know or recognize that plaintiff's signature was necessary on Tumbleweed checks, and that therefore it continued to pay Tumbleweed checks without plaintiff's countersignature. Here again we have a disagreement on what, to us, seems to be a material fact issue.

Defendant also urges the existence of a contract or partnership between Tumbleweed, Worsham (who received the proceeds of the check), and plaintiff, and that plaintiff's own partner received the proceeds of the check.

Now in summing up, it seems that the trial judge rested his decision on inadequacies and defects in the Bank's defense to the motion for summary judgment and his belief that there were no material fact issues in controversy. Plaintiff urges that this decision was correct because of what he describes as deficiencies in these affidavits and their contents.

We do not believe that a summary judgment can be justified on the circumstances

here present. The plaintiff himself, in his interrogatories and his affidavits, shows considerable confusion about when the money was deposited, the signature card executed, and its adequacy; and states, without any substantiation, that the check in question was cashed in February, 1962. The Bank maintains that it did not know, or admit, that plaintiff's signature was required on Tumbleweed corporation checks. Again we point out that we do not have in this record any copies of either the new signature card or the check in question.

In his affidavits plaintiff alleges that he did not know that the $4,200.00 check had been issued to and cashed by Worsham until many weeks after this had been accomplished; and finally, that in March he himself drew out $5,000.00, which left very little of the $10,000 deposit in Tumbleweed's account.

■ We think the law as enunciated in Pattison v. Highway Insurance Underwriters, 292 S.W.2d 694 (Tex.Civ.App., N.R.E.) is pertinent here, as illustrated by the following quotation:

"The Supreme Court has announced as a general rule, 'that if a motion involves the credibility of affiants or deponents, or the weight of the showings or, it is said, a mere ground of inference, the motion will not be granted.' See Gulbenkian v. Penn, 1952, 151 Tex. 412, 252 S.W.2d 929, 931, where the Court quotes with approval statements from courts of civil appeals to the effect that summary procedure is not intended to deprive litigants of their right to a ' "full hearing on the merits of any real issue of fact" ' and that ' "All doubts as to the existence of a genuine issue as to a material fact" ' must be resolved against the motion. (Emphasis supplied).

"Courts of civil appeals—see Loud v. Sears, Roebuck & Co., Tex.Civ.App. Dallas, 1953, 262 S.W.2d 548—have

declared that the summary judgment practice is to be exercised with great caution since litigants are entitled to a *final trial* where there is the *slightest doubt* as to the facts.

"The cases make it plain that in summary proceedings the burden rests heavily upon the moving party to negative *conclusively* the existence of a genuine issue in regard to some *controlling fact* entitling the movant to judgment. And that where it appears that such an issue 'may exist', summary relief is to be denied without regard to informalities or defects in the resisting party's showing. See Felker Lumber Co. v. Superior Insurance Co., Tex. Civ.App. Texarkana, 1954, 272 S.W.2d 161."

Also, in the case of Langehennig v. Hohmann, 365 S.W.2d 203 (Tex.Civ.App., N. R.E.), the court points out that the affidavits filed in a summary judgment case must contain statements of fact which affiant knows and is *able to substantiate* on a trial of the case on the merits. On the basis of these two cases and the cases cited therein, we believe that the law clearly states that the movant in a summary judgment case has a great burden not only to negative conclusively the existence of a genuine issue with regard to a controlling fact, but it must also be clear that such affiant can substantiate his statements or allegations. See also Westfall v. Lorenzo Gin Co., Tex.Civ.App., 287 S.W.2d 551, wherein the court points out that affidavits that support a summary judgment must contain facts which affiant knows and is able to substantiate on trial of the case on its merits. In the case before us there is not sufficient indication that affiant can substantiate several matters we have outlined above as appearing to us to be material fact questions—as, for example, the date the Worsham check was cashed; the date of the deposit of the $10,000; and further, whether the second signature card was adequate or what was actually on it.

It is not clear from movant's affidavits why these material facts are not set forth in said affidavits, or some indication included therein leading to the belief they can be substantiated, as the cases herein cited indicate should be done.

On the basis of the above authorities we reach the conclusion that in the matter before us the plaintiff did not sufficiently meet the requirements which the law places upon one seeking a summary judgment. We further find that the record as a whole indicates the existence of material fact questions that should be determined in a trial of this case on its merits.

The judgment of the trial court is accordingly reversed and the case remanded.