Carmen L. GARCIA, Appellant,

v.

JOHN HANCOCK VARIABLE LIFE INSURANCE COMPANY, Appellee.

No. 04-92-00350-CV.

Court of Appeals of Texas, San Antonio.

June 16, 1993.

Opinion Denying Rehearing Aug. 31, 1993.

Dayton G. Wiley, Dayton G. Wiley & Associates and Ralph J. Bernsen, Sr., Garwood & Associates, P.C., San Antonio, for appellant.

Edward R. Finck, Jr., Clemens & Spencer, San Antonio, for appellee.

Before PEEPLES, BIERY and GARCIA, JJ.

## OPINION

BIERY, Justice.

This is an appeal of a summary judgment granted in favor of appellee John Hancock Variable Life Insurance Company (John Hancock). Appellant, Carmen Garcia, as beneficiary, brought suit to collect the proceeds of a life insurance policy issued to her husband, Alfredo Garcia. She brings one point of error alleging the trial court erred in granting John Hancock's motion for summary judgment because it failed to establish each element of its misrepresentation defense as a matter of law. We reverse and remand.

 On appellate review, a summary judgment is not entitled to the same deference given to a judgment following a trial on the merits. When reviewing the granting of a summary judgment, this court cannot view the evidence in the light most favorable to the judgment of the trial court. At both the trial and appellate stages, the question is not merely whether the non-movant raised a material fact issue to defeat the motion. Rather, the movant must prove it was entitled to judgment as a matter of law. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970); TEX. R.CIV.P. 166a(c). If the movant fails to prove entitlement to judgment as a matter of law, this court must remand the case for a trial on the merits. *See Gibbs*, 450 S.W.2d at 828–29.

The standards for reviewing a summary judgment have been clearly set forth by the Texas Supreme Court:

(1) The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

(2) In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

(3) Every reasonable inference must be indulged in favor of the non-movant and any doubt resolved in its favor.

*Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985); *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex.1984).

 A defendant pleading an affirmative defense may obtain summary judgment by (1) disproving at least one of the elements of each of the plaintiff's causes of action or (2) conclusively proving all elements of the affirmative defense. *See American Medical Elecs., Inc. v. Korn*, 819 S.W.2d 573, 576 (Tex.App.—Dallas 1991, writ denied); *International Union v. Johnson Controls, Inc.*, 813 S.W.2d 558,

563 (Tex.App.—Dallas 1991, writ denied); *Lesbrookton, Inc. v. Jackson,* 796 S.W.2d 276, 280 (Tex.App.—Amarillo 1990, writ denied). When a defendant moves for summary judgment on the basis of an affirmative defense, he must expressly present and conclusively prove each essential element of that defense. *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex.1972); *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979); *Deer Creek Ltd. v. North Am. Mortgage Co.,* 792 S.W.2d 198, 200 (Tex.App.—Dallas 1990, no writ). Unless the movant/defendant conclusively establishes its affirmative defense, the non-movant/plaintiff has no burden in response to a motion for summary judgment filed on the basis of an affirmative defense. *Torres v. Western Casualty & Sur. Co.,* 457 S.W.2d 50, 52 (Tex.1970).

 A defendant moves for summary judgment on the basis of an affirmative defense when he denies the plaintiff's right to judgment, even if the plaintiff established every allegation in its pleadings. *Highway Contractors, Inc. v. West Tex. Equip. Co.,* 617 S.W.2d 791, 794 (Tex.Civ. App.—Amarillo 1981, no writ). Here, John Hancock does not dispute Mrs. Garcia's allegations that the benefits due under the policy are unpaid. Rather, instead of directly attacking one or more elements of Mrs. Garcia's cause of action, John Hancock asserts an affirmative defense. Specifically, John Hancock based its motion for summary judgment on the premise that it was relieved of its benefit payment obligations because Mr. Garcia intentionally misrepresented the state of his health.

In support of its motion for summary judgment, John Hancock submitted the following: in February and March of 1986, appellant's husband, Alfredo R. Garcia, applied for and was issued a life insurance policy with John Hancock. In two policy applications, Mr. Garcia was asked a series of questions regarding his health history. The first application, dated February 25,

1986, was signed by Mr. Garcia and an agent of the Insurance Company. On that application, Mr. Garcia represented that he had never been treated for or had any known indication of diabetes. He also represented that he (1) had not consulted a physician or been examined or treated at a hospital or other medical facility within the last five years; (2) was not being treated by a physician or taking any prescription drug; and (3) did not have a personal physician.

The second application, dated March 10, 1986, was signed by Mr. Garcia and a medical examiner pursuant to a physical examination initiated by John Hancock. On this second application, Mr. Garcia again represented that he had never been treated for or had any indication of diabetes. He also responded, once again, that he was not under treatment of a doctor or taking any prescription drug. Further, he stated that he had never been treated for or had any indication of dizziness and that he did not smoke cigarettes. Mr. Garcia executed the applications stating "the foregoing statements and answers" are "to the best of my knowledge and belief, complete, true and correctly recorded." [1]

In February of 1987, approximately a year after the life insurance policy was issued, Mr. Garcia died of myocardial infarction, commonly referred to as a "heart attack." During the course of this litigation, Mrs. Garcia candidly admitted that Mr. Garcia had been diagnosed as having diabetes in 1970 and had either injected insulin or taken pills daily until 1980, when the disease went into remission. Further, it is undisputed that Mr. Garcia was experiencing dizziness around the time he made representations to the contrary. In fact, he had visited a doctor on February 18, 1986 and was taking prescription medicine for diabetes at the time he executed the March 10, 1986 application. During the visit with the doctor, Mr. Garcia also reported that he smoked fourteen cigarettes a day.

---

1. There is an Amendment to Application, dated March 27, 1986, which incorporates the application dated March 10, 1986 into Part A of the February 25, 1986 application. The execution is contained in Form 174R(I)VL of this amendment which was, according to the record, attached to the applications.

■ Applying the summary judgment standards discussed above to the facts of this case, we must determine whether John Hancock proved each element of its misrepresentation defense as a matter of law. Under Texas law, there are five elements an insurance carrier must plead and prove in order to establish a misrepresentation defense:

(1) the making of a representation;

(2) the falsity of the representation;

(3) reliance on the misrepresentation by the insurer;

(4) *the intent to deceive on the part of the insured in making the misrepresentation;* and

(5) the materiality of the misrepresentation.

*Mayes v. Massachusetts Mut. Life Ins. Co.,* 608 S.W.2d 612, 616 (Tex.1980) (emphasis added). Assuming, without deciding, elements one, two, three and five were established, John Hancock requests this court to determine, for the first time in Texas jurisprudence, that "intent to deceive" was proven as a matter of law for summary judgment purposes. We find the affirmative defense raised by John Hancock to be a form of fraud; for example, a fraud cause of action brought by a plaintiff also has an element of intent. *Stone v. Lawyers Title Ins. Corp.,* 554 S.W.2d 183, 185 (Tex.1977). Our research has found no reported Texas case in which a plaintiff suing for fraud has ever proven the element of intent to deceive as a matter of law in a summary judgment proceeding. Further, we see at least some analogy, albeit a different standard of proof (beyond a reasonable doubt) to the *mens rea* or guilty mind element in the criminal law. It is axiomatic, of course, that intent, or *mens rea,* is a fact question for the jury in a criminal case. We think it to be a rare instance where subjective intent could be established as a matter of law. *See e.g., Harlow v. Fitzgerald,* 457 U.S. 800, 816–17, 102 S.Ct. 2727, 2737–38, 73 L.Ed.2d 396 (1982).

To support its argument, John Hancock contends this case is similar to the cases of *Estate of Diggs v. Enterprise Life Ins. Co.,* 646 S.W.2d 573 (Tex.App.—Houston [1st Dist.] 1982), *rehearing denied,* 657 S.W.2d 813 (1983, writ ref'd n.r.e.), and *Flowers v. United Ins. Co. of Am.,* 807 S.W.2d 783 (Tex.App.—Houston [14th Dist.] 1991, no writ). In *Diggs,* the insured bought a credit life insurance policy simultaneous with his purchase of a new car on March 12, 1980. 646 S.W.2d at 574. In the application for insurance, Mr. Diggs stated that he was in good health and had "not suffered from any heart disease, or other cardiovascular diseases ... of any kind." On February 15, 1981, Mr. Diggs died of cardiac arrhythmia, a heart condition. After a claim for payment was denied, his widow brought suit. The insurance company moved for, and was granted, summary judgment based upon the defense of misrepresentation. The court of appeals held that the insurance company's proof conclusively showed the deceased knowingly made a false representation regarding his medical history:

Dr. Manus J. O'Donnell, a cardiologist, testified by deposition that he first met Harvey Diggs at Methodist Hospital in Houston in 1976; that Mr. Diggs complained of a shortness of breath, swelling of his legs, chronic cough, spitting blood; that Mr. Diggs had a history of heart disease dating back to 1972; that upon examination, Mr. Diggs was found to have congestive heart failure with marked enlargement of the heart; that there is no known cure for this condition; that Mr. Diggs' condition did not change from 1976 to March 12, 1980; that it is unusual for a patient in Mr. Diggs' 1976 condition to live longer than five years; that he explained Mr. Diggs' medical condition to him and explained the limitations that the condition would impose on his life-style; that various drugs were prescribed to treat the disease; and that he examined Mr. Diggs on April 22, 1980 and found a significant degree of heart failure. Mr. Diggs' medical records show that, on the advice of his doctor, he took a disability retirement from his job in 1977. These records also show that, on the day after the application for insurance was signed, Mr. Diggs received

treatment for his heart condition at the Texas Medical Center. The examination on that day revealed that Mr. Diggs' heart was pronouncedly enlarged. *Id.* at 574–75. Further, the court stated it was "inconceivable that any person with Diggs' medical history could fail to know he was not in good health or fail to know that he was then suffering from a serious heart ailment." *Id.* at 575. Nevertheless the court held,

> We are of the opinion that *we may not presume an intent to deceive* from the fact that Mr. Diggs, with a long history of heart ailments, made false statements on his application for insurance. Since there is no evidence regarding Mr. Diggs' intent to deceive, the summary judgment was improperly granted.

*Id.* at 576 (emphasis added).

In *Flowers v. United Ins. Co. of Am.,* 807 S.W.2d 783 (Tex.App.—Houston [14th Dist.] 1991, no writ), a similar result was reached. The insured represented that he had never had high blood pressure or "disease or disorder of heart" in an insurance application executed sometime in November of 1987. *Id.* at 784. He also represented that he had not been in a hospital within the past five years. Later, it was discovered Mr. Flowers admitted having high blood pressure in a Texas Department of Correction [TDC] medical intake form three years earlier and, in fact, had taken medication for this condition for two years while incarcerated. Further, while in prison, Mr. Flowers was admitted to the hospital for an injured wrist and during his hospitalization he was diagnosed with borderline cardiomegaly or "enlargement of the heart."

In 1988, approximately one year later, Mr. Flowers was killed in a motor vehicle accident. As in this case, his widow brought suit as beneficiary to collect the proceeds under the policy and the insurance company was granted summary judgment based on the defense of misrepresentation. Because the parties agreed all elements except intent to deceive were established, the only issue before the court of appeals was whether the insurance company established intent to deceive. *Id.* at 785.

The insurance company claimed Mr. Flowers' admission of a health problem on the prison intake form "when his medical care was free" proved intent as a matter of law. In determining it did not, the court stated:

> The fact that Mr. Flowers admitted a health problem when he was incarcerated at TDC simply shows that he knew of his health conditions. The court held in *Diggs* that the fact that one misrepresents one's health condition is insufficient to establish intent to deceive as a matter of law. We hold that mere knowledge of one's health condition is insufficient to prove intent to deceive as a matter of law. The circumstances in this case would raise a fact question as to Mr. Flowers' intent. A jury might well believe that his knowledge shows that he intended to deceive [the insurance company]. But we cannot say as a matter of law that this is true.

*Id.* at 786.

Here, John Hancock argues there are facts in this case not present in *Diggs* and *Flowers.* Specifically, it contends the fact that Mr. Garcia misrepresented his health on two applications, dated February 25 and March 10 respectively, confirms his intent to deceive because both sets of representations were made within two weeks of each other, with the first being made less than a week after February 18, the date he began taking a prescription drug to treat diabetes.

■ We initially note that an issue of material fact exists as to when the first alleged misrepresentation was made in this case. Although the first application was *dated* February 25, 1986, appellant claims her husband answered the questions on the application, thereby making the first representations, prior to his visit to the doctor on February 18, 1986. Because we must take as true evidence favorable to the non-movant appellee, and resolve doubts in her favor, we cannot conclude John Hancock is factually correct as a matter of law. *Nixon,* 690 S.W.2d at 548–49; *Montgomery,* 669 S.W.2d at 310–11.

Further, even if John Hancock's argument is factually correct, we do not agree

it has proven intent to deceive as a matter of law based upon the number, frequency and proximity of the alleged misrepresentations to the medical treatment. John Hancock's summary judgment proof is almost identical to that presented in *Diggs* and *Flowers*.[2] In *Diggs*, the court held the fact that one misrepresents one's health condition is insufficient to establish intent to deceive as a matter of law. 646 S.W.2d at 575–76. In *Flowers*, the court held mere knowledge of one's health condition is insufficient to prove intent as matter of law. *Id.* at 576. If true, the fact that Mr. Garcia was told of a health problem within close proximity to answering questions propounded by John Hancock simply shows that he knew of his health condition. If true, the fact that he made false statements on more than one application shows that he misrepresented his health condition. As noted by the court in *Flowers*, the fact that the insurance company proved the insured "knew about his health problems and made false statements concerning his problems does not prove as a matter of law that he intended to deceive [the insurance company]." 807 S.W.2d at 786. While a jury may very well find intent to deceive proven by a preponderance of the evidence, we hold John Hancock failed to establish intent to deceive as a matter of law. Appellant's point of error is sustained.[3]

◼ In crosspoints one and two, John Hancock contends the trial court erred in overruling objections to the amended affidavit of the appellant, Mrs. Garcia. Objection (b) was to the following language:

> I *believe* we met with Mr. Peralta on February 5, 1986 (as per letter from John Hancock Insurance Company attached and made a part hereof as though set forth at length).

(emphasis added). At trial, and on appeal, John Hancock contends the word "believe"

shows an opinion and conclusion on the part of the appellant, rather than personal knowledge. As John Hancock asserts, summary judgment affidavit testimony, especially from an interested witness, must be based upon personal knowledge. *Lightfoot v. Weissgarber*, 763 S.W.2d 624, 628 (Tex.App.—San Antonio 1989, writ denied). Testimony based upon "belief" is not sufficient. *See id.* (holding that testimony based on best knowledge and belief of the affiant does not meet strict requirements of Tex.R.Civ.P. 166a(e)). Such language fails to positively and unqualifiedly represent that the "facts" to be disclosed are true. *See Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex.1984); *Hagar v. Texas Distrib., Inc.*, 560 S.W.2d 773, 775 (Tex.Civ. App.—Tyler 1977, writ ref'd n.r.e.). Accordingly, crosspoint one is sustained.

◼ In crosspoint two, John Hancock argues its objection (c) to the following language should have been sustained:

> It was at any rate before my husband visited Dr. Koli.

In making this argument, John Hancock contends, for the first time on appeal, that the affidavit does not state how Mrs. Garcia became "personally familiar with her husband's visit to Dr. Koli." The failure to object to the form of the affidavit on the ground that it does not show personal knowledge results in waiver of the complaint. *See Grand Prairie Indep. Sch. Dist. v. Vaughan*, 792 S.W.2d 944, 945 (Tex.1990); *Nguyen Ngoc Giao v. Smith & Lamm, P.C.*, 714 S.W.2d 144, 148 (Tex. App.—Houston [1st Dist.] 1986, no writ); *Walkoviak v. Hilton Hotels Corp.*, 580 S.W.2d 623, 626–27 (Tex.Civ.App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.). In its motion, John Hancock objected to the above testimony as conclusory hearsay "based on what [her] husband told her." Because John Hancock waived its com-

---

**2.** Although the dissent finds *Diggs* and *Flowers* factually distinguishable, we see the facts of *Diggs* and *Flowers* to be equally egregious to this case. Nevertheless, there was ·not sufficient summary judgment proof in those cases to establish intent to deceive as a matter of law.

**3.** In counterpoint two, John Hancock contends "On page 19 of her Brief in the second, third, fourth and fifth paragraphs on said page, Appellant asserts what appears to be the defense of estoppel to use the misrepresentation defense." Because we have held John Hancock failed to prove each element of the defense as a matter of law, we do not reach this issue.

plaint that the testimony is not based upon personal knowledge, and because hearsay is not evident on the face of the testimony, we cannot assume Mrs. Garcia's testimony that "It was at any rate before my husband visited Dr. Koli" was based upon an inadmissible out-of-court statement made by her husband. Crosspoint two is overruled.

In crosspoint three, John Hancock contends the trial court erred in sustaining appellant's objections, made in Plaintiff's Response to Defendants' Motion for Summary Judgment, to the affidavit of Cesar I. Gonzales. Appellant's objection 5(c) (which was sustained as to "Item" or paragraph 4) provides:

> The affidavit contains statements, among which statements are Item 4 ... of the affidavit which would not be admissible in evidence at the time of trial in this case.

Appellant's objection 5(d) (which was sustained as to "Item" or paragraph 8) states:

> The affidavit contains matters of speculation and conclusion on the part of the affiant among which speculations and conclusion are included statements in Item 8 of the affidavits which would not be admissible in evidence.

Specifically, John Hancock contends appellant's objection 5(c) was too general and objection 5(d) was incorrectly sustained because it "does not point out what part or parts of Item 8 are speculative and what parts are conclusions." To preserve error, an objection must state the specific grounds for the requested ruling, if these grounds are not apparent from the context of the objection. TEX.R.APP.P. 52(a). A specific objection "is one which enables the trial court to understand the precise grounds so as to make an informed ruling, affording the offering party an opportunity to remedy the defect, if possible." *McKinney v. National Union Fire Ins. Co.,* 772 S.W.2d 72, 74 (Tex.1989); *see also McNabb v. Kentucky Cent. Life Ins. Co.,* 631 S.W.2d 253, 255 (Tex.App.—Fort Worth 1982, no writ) (objection to affidavit filed in summary judgment proceeding must be specific). In the present case, it is not apparent from appellant's objection which statements were objected to and no grounds were given to support her arguments of inadmissibility. Accordingly, we hold appellant's objections were not properly specific and sustain crosspoint three.

The judgment of the trial court is reversed and the cause is remanded for further proceedings.

PEEPLES, Justice, dissenting.

I would affirm the judgment and hold that the evidence shows misrepresentation as a matter of law.

On the issue of intent to deceive, the evidence shows the insured told his treating doctor about his problems in mid-February but he did not tell the insurance company about the same problems and treatment when he applied for life insurance on March 10. He was taking prescription medicine for the condition at the very time that he denied to the examining insurance doctor that he was taking any medicine! In other words, at a time when he had fresh awareness that he was seeing a doctor, taking medication, and being treated for diabetes, he denied these things to the insurance company examiner, who would determine whether he could purchase life insurance. In sum, he admitted things to his treating doctor that he denied to his insurance examining doctor just a few weeks later. He told the examining doctor that he was not seeing another doctor, even though he had seen the treating doctor less than one month before and was still taking medicine prescribed by him.

Taken together, these undisputed facts prove misrepresentation as a matter of law and distinguish the case from *Diggs* and *Flowers,* on which the majority relies.

## ON APPELLEE'S MOTION FOR REHEARING

BIERY, Justice.

John Hancock's motion for rehearing invites this court to reexamine its disposition of this summary judgment proceeding in light of *John Hancock Mut. Life Ins. Co. v. Esparza,* 286 S.W.2d 695 (Tex.Civ.App.— San Antonio 1955, writ ref'd n.r.e.). In

*Esparza,* the insured permitted his insurance to lapse for non-payment of a premium, and thereafter, the insurer submitted to him an application for reinstatement. *Id.* at 696. When filling out the form, the insured stated: (1) he was in sound health, (2) during the period of his default in paying the premium he had not suffered from any disease or had symptoms of such, and (3) he had not consulted or been treated by a physician or other practitioner. In fact, he had been to seven doctors and was under daily treatment for cancer of the bone, hands, arms and chest; two months and two days after he made the statements, the insured died of cancer. *Id.*

The insurer brought suit to cancel the policy alleging fraudulent misrepresentation. *Id.* at 695–96. Trial was to a jury, which found that the insured's misrepresentations were not intentionally made. *Id.* at 696. On appeal, the insurer argued its motion to disregard the jury answers on intent and for judgment non obstante veredicto should have been granted because the uncontradicted evidence was that the false statements were intentionally made. *Esparza,* 286 S.W.2d at 696. This court reviewed the record "for any evidence" supporting the jury answers on lack of intent, but determined:

> The motion for judgment non obstante veredicto should have been granted. We conclude, in any event, the finding that there was no intent to deceive is against the overwhelming preponderance of the evidence.

*Id.* at 696, 697. Accordingly, the judgment of the trial court was reversed and rendered canceling the policy. *Id.* at 697.

■■■■ Unlike the plaintiff in *Esparza,* the insured in this case has not had the benefit of a jury trial.[1] The law in Texas is well settled that summary judgment is a harsh remedy which must be strictly construed. *Bryant v. Winn–Dixie Stores, Inc.,* 786 S.W.2d 547, 548 (Tex.App.—Fort Worth 1990, writ denied), *cert. denied,* 498 U.S. 1126, 111 S.Ct. 1090, 112 L.Ed.2d 1194 (1991). This is because a summary proceeding is "not a conventional trial, but an exception to the usual and traditional formal procedure whereby witnesses are heard in open court and documentary proof is offered and received into evidence." *Richards v. Allen,* 402 S.W.2d 158, 159 (Tex.1966). A summary judgment should not amount to a trial by deposition or affidavit, or be resolved by weighing the relative strength of the conflicting facts and inferences. *Gaines v. Hamman,* 163 Tex. 618, 626, 358 S.W.2d 557, 562–63 (Tex. 1962). Stated another way:

> [A]s originally introduced into the common-law system, summary proceedings were not available in cases ... which in their very nature tend, in justice to all parties, to require the full development of all the facts on a jury trial, including examination in court of all available witnesses, whether friendly, impartial, or adverse. It [is not] the purpose of the rule "to provide a substitute for *existing methods in the trial of issues of fact or to furnish a way for anticipatory determination of questions of law."*

*Pattison v. Highway Ins. Underwriters,* 292 S.W.2d 694, 699 (Tex.Civ.App.—Galveston 1956, writ ref'd n.r.e.) (citation omitted) (emphasis in original).

■■■■ For these reasons, the presumptions and burden of proof that are applicable to a conventional trial are immaterial to the burdens faced by the movant and non-movant in a summary judgment proceeding. *Missouri–Kan.–Tex. R.R. v. City of Dallas,* 623 S.W.2d 296, 298 (Tex. 1981); *Mayhew v. Town of Sunnyvale,* 774 S.W.2d 284, 287 (Tex.App.—Dallas 1989, writ denied), *cert. denied,* 498 U.S. 1087, 111 S.Ct. 963, 112 L.Ed.2d 1049 (1991) (presumption of validity usually afforded governmental decisions cannot be used to affirmatively sustain movant's summary judgment burden when attacking constitutionality of zoning ordinances); *see generally* TIMOTHY PATTON, SUMMARY JUDGMENTS IN TEXAS § 1.02 (1992). For example, the burden on a defendant/movant seeking summary judgment on a plaintiff's cause of action is not the same burden the defendant must satisfy to obtain an instructed

---

**1.** If John Hancock suffers an adverse verdict in this case, *Esparza* may then have an effect.

verdict in a trial on the merits. *See Lesbrookton, Inc. v. Jackson,* 796 S.W.2d 276, 285–86 (Tex.App.—Amarillo 1990, writ denied) (while absence of evidence on one element of plaintiff's fraud claim might entitle defendant to instructed verdict, it would not entitle defendant to summary judgment); *Flores v. H.E. Butt Stores, Inc.,* 791 S.W.2d 160, 162 (Tex.App.—Corpus Christi 1990, writ denied) (motion for summary judgment incorrect to extent based on "no evidence" directed verdict standard). While the defendant is entitled to an instructed verdict if the plaintiff fails to introduce evidence on one element of his case, the defendant is not entitled to a summary judgment based on the failure of the plaintiff to sustain the burden it would have at a trial on the merits. *See State v. Seventeen Thousand and No/100 Dollars U.S. Currency,* 809 S.W.2d 637, 639 (Tex. App.—Corpus Christi 1991, no writ) (discussing distinction between plaintiff's failure to raise fact issue and defendant's conclusively disproving plaintiff's claim). Even if the defendant's motion for summary judgment represents proof demonstrating the plaintiff will likely lose by a directed verdict at trial, the defendant is not entitled to a summary judgment based on the weakness of the plaintiff's claims. *Jones v. General Elec. Co.,* 543 S.W.2d 882, 884 (Tex.Civ.App.—El Paso 1976, writ ref'd n.r.e.). Stated another way, the defendant in state court is not entitled to a summary judgment merely because there is "no evidence" to support the plaintiff's allegations. *See id; see also Gibbs v. General Motors, Corp.,* 450 S.W.2d 827, 828 (Tex.1970) (question on appeal is whether summary judgment proof establishes as a matter of law no genuine issue of material fact exists, not whether proof raises fact issue). In federal practice, however, a defendant moving for summary judgment may discharge his burden by showing that there is no evidence to support one or more elements of the plaintiff's case. *International Ass'n of Machinists & Aerospace Workers v. Intercontinental Mfg. Co.,* 812 F.2d 219, 222 (5th Cir.1987); *see generally* TIMOTHY PATTON, SUMMARY JUDGMENTS IN TEXAS § 5.03[2][c] 5.03[2][c] (1992).[2]

■ In addition to this general cautionary approach to summary judgments, Texas courts have recognized that even greater care should be taken when considering summary judgment motions in select categories of litigation. As discussed in our original opinion, "summary judgment has rarely been viewed as appropriate when the issue is inherently one for a jury or judge, as in cases involving *intent,* reliance, uncertainty, unliquidated damages, and discretion." TIMOTHY PATTON, SUMMARY JUDGMENTS IN TEXAS § 1.02 (1992) (emphasis added); *see also El Paso Assocs., Ltd. v. J.R. Thurman & Co.,* 786 S.W.2d 17, 21 (Tex. App.—El Paso 1990, no writ); *Dan Lawson & Assocs. v. Miller,* 742 S.W.2d 528, 530 (Tex.App.—Fort Worth 1987, no writ);

**2.** In *Casso v. Brand,* the Texas Supreme Court expressly rejected the argument that state law places, or should place, the identical burden which is placed on the non-movant in a federal summary proceeding stating:

Summary judgments in federal courts are based on different assumptions, with different purposes, than summary judgments in Texas. In the federal system, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' Thus, federal courts place responsibilities on both movants and non-movants in the summary judgment process...."

Texas law, of course, is different. While the language of our rule is similar, our interpretation of that language is not. We use summary judgments merely "to eliminate patently unmeritorious claims and untenable defenses," and we never shift the burden of proof to the non-movant unless and until the movant has "establish[ed] his entitlement to a summary judgment on the issues expressly presented to the trial court by conclusively proving all essential elements of his cause of action or defense as a matter of law."

....

Moreover, we see no overriding policy reasons for modifying our summary judgment standards under the common law. While some commentators have urged us to adopt the current federal approach to summary judgments generally, we believe our own procedure eliminates patently unmeritorious cases while giving due regard for the right to a jury determination of disputed fact questions.

776 S.W.2d 551, 555–57 (Tex.1989) (citations omitted).

*Moeller v. Fort Worth Capital Corp.*, 610 S.W.2d 857, 862 (Tex.Civ.App.—Fort Worth 1980, writ ref'd n.r.e.); *Kolb v. Texas Employers' Ins. Ass'n*, 585 S.W.2d 870, 873 (Tex.Civ.App.—Texarkana 1979, writ ref'd n.r.e.). Based on the foregoing analysis, John Hancock's motion for rehearing is denied.