**Opinion filed July 23, 2009**



In The

# Eleventh Court of Appeals

_____

## No. 11-08-00031-CV

_____

## CHUSUKDI AND SOPINTRA TEMCHAROEN, Appellants

## V.

## UNITED FIRE LLOYDS, Appellee

**On Appeal from the 136th District Court**

**Jefferson County, Texas**

**Trial Court Cause No. D-177,757**

### O P I N I O N

Chusukdi and Sopintra[1] Temcharoen filed this suit against United Fire Lloyds for breach of contract of their homeowner's insurance policy. They alleged that United Fire Lloyds failed to completely pay for damages they incurred as a result of Hurricane Rita. The homeowner's policy covered damage to the house, and in an endorsement, United Fire Lloyds also agreed to reimburse the Temcharoens for additional living expenses they incurred as a result of damage to their house. United Fire Lloyds filed a traditional motion for summary judgment, claiming its right to declare the

---

[1]We note that "Sopintra" is also called "Sopin" in the body of the notice of appeal.

policy void because Sopintra Temcharoen had submitted "receipts" for living expenses that she admitted had not been paid at the time she provided the "receipts." Finding that the anti-technicality statute, TEX. INS. CODE ANN. § 705.003 (Vernon 2009), did not apply and that Sopintra had made a fraudulent statement concerning living expenses she had incurred, the trial court granted United Fire Lloyds's motion. The court stated that she had "fraudulently claim[ed] a loss where none existed." Because we hold that Section 705.003 is applicable, that United Fire Lloyds did not meet the requirements of Section 705.003(b), and that there are fact questions, we reverse the summary judgment in favor of United Fire Lloyds and remand for a trial on the merits.

*Standard of Review*

The standards for reviewing a summary judgment are well established:

(1) The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

(2) In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

(3) Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). The appellate court "must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented" and may not ignore "undisputed evidence in the record that cannot be disregarded." *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755, 757 (Tex. 2007). When a defendant moves for summary judgment on the basis of an affirmative defense, he must expressly present and conclusively prove each essential element of that defense. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). Where, as here, a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, summary judgment will be affirmed on appeal if any of the summary judgment grounds advanced by the movant are meritorious. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001).

2

*Background Facts*

Prior to declaring that the policy was void, United Fire Lloyds paid approximately $85,214 to the Temcharoens under their homeowner's policy, including $64,681 for damages to their dwelling, $12,808 for damages to their personal property, and $7,725 for additional living expenses. In their suit, the Temcharoens claim that additional money is owed for damage to their dwelling and personal property and for additional living expenses that they incurred from September 28, 2005, until mid-September 2006.

As a result of Hurricane Rita and the damage to their residence, the Temcharoens rented a room from friends and former neighbors, Hugh and Peggy Phillips, who also lived in Beaumont. In her deposition and affidavit, Sopintra testified that they paid the Phillips approximately $24,625 for a room from September 28, 2005, until September 2006; United Fire Lloyds reimbursed them $7,725 in February 2006 for the period from September 28 until that time. Sopintra described their agreement with the Phillipses as an oral agreement to rent the room for $75 per day.

On January 13, 2006, Sopintra faxed to United Fire Lloyds five receipts that she said were from Peggy Phillips for "room and board" and that totaled $7,725. She later testified that the receipts were for room rental only. United Fire Lloyds issued a reimbursement check in that amount on February 9, 2006, for the additional living expenses; the check was delivered to Sopintra on February 10.

Sopintra continued to fax to United Fire Lloyds "receipts" from Peggy Phillips in amounts of $1,050 to $2,625. However, Sopintra's cover page would state, for example, "This is an **invoice** for the allowance living expenses (ALE), a total of $2,100.00 from 2/6/06 to 3/5/06" (emphasis added). According to Sopintra's testimony, she gave checks to Mr. Phillips, but he held the checks. Therefore, she could not provide checks as proof of payment to United Fire Lloyds. Sopintra admitted at her deposition in April 2007 that she had not "paid" the Phillipses the $7,725 before submitting "receipts" to United Fire Lloyds. She also testified, and stated in an affidavit, that Patrick Peden, an employee of United Fire Lloyds, had instructed her as follows:

> [T]o break down my additional living expenses into smaller increments and submit those to United Fire Lloyds as receipts in order to get paid. In so doing, I was not intending to misrepresent anything, but was only doing as I had been instructed.

3

English is not Sopintra's first language, and her deposition is often confusing. Based on her testimony, which we must accept as true for summary judgment purposes, Sopintra gave checks to the Phillipses, but they were not cashed until the Temcharoens had money in the bank for the checks to be honored. A reasonable inference from her testimony is that she viewed her obligation to furnish United Fire Lloyds with evidence of living expenses she had incurred even though cash had not been transferred from their account to the Phillipses. In her summary judgment affidavit, Sopintra stated that she personally paid Mr. Phillips over $20,000 in rent for the time that she stayed in his home, that she knew that Mr. Phillips ultimately received cash when the checks were honored, and that there was no agreement between them and Mr. Phillips concerning what Mr. Phillips would do with the rent money. In another summary judgment affidavit, Mr. Phillips confirmed their agreement for rent of $75 per day while the Temcharoens' house was under construction and stated that "Sopintra Temcharoen paid [him] over $20,000 in rent for the time she stayed in [his] home." There was a notation on one check: "Called Vickie at bank about holding checks 6 - 12 months." Sopintra testified in her deposition that probably Mr. Phillips wrote that notation, but she did not know. In answer to a question by United Fire Lloyds as to why she had not furnished the Phillipses social security numbers when it requested the numbers, Sopintra said that she relayed the message to the Phillipses, but she did not have those numbers. Sopintra testified that Mr. Phillips told her that United Fire Lloyds could call him if it needed his social security number.

The record includes a summary judgment affidavit from Theresa Edwards, a teller with Five Point Credit Union. In her affidavit, Edwards stated the following:

> 2. I am employed with Five Point Credit Union. In my position as teller with Five Point Credit Union, I personally handled the transactions with Hugh Phillips regarding Check Nos. 2010, 2011 and 2012 and drawn on the account of Sopintra Temcharoen, [A]ccount No. 923204.

> 3. On September 6, 2006, Mr. Hugh Phillips, Texas DL # 02812614, presented Check No. 2010 in the amount of $7,725.00 to me, as teller for Five Point Credit Union, for payment. The check was cashed in full and the amount of $7,725.00 was given to Mr. Phillips.

> 4. On September 7, 2006, Mr. Hugh Phillips, returned to the bank and presented Check Nos. 2011 and 2012, to me for payment. I cashed both checks, in

4

the amounts of $8,000.00 and $4,900.00, respectively, and presented Mr. Phillips with cash in said amounts.

Check No. 2010 for $7,725 was dated February 16, 2006, and it apparently was to pay the Phillipses after United Fire Lloyds had given Sopintra that amount on February 10. Check No. 2011 was dated February 24; and Check No. 2012 was dated June 5. In addition to those amounts, Sopintra testified that on September 29 she had written Check No. 2013 and obtained $5,000 in cash from her money market account at Five Point Credit Union in order to pay Hugh Phillips $4,000 in cash for living expenses. United Fire Lloyds's payments for additional living expenses were limited to the $7,725 payment.

*United Fire Lloyds's Motion for Summary Judgment*

United Fire Lloyds filed its motion for summary judgment based upon two grounds: (1) the affirmative defense of common-law fraud and (2) a specific policy provision in the homeowner's policy that voids the policy if there is an event of concealment, misrepresentation, or fraud. The Temcharoens's homeowner policy in "SECTION I AND II – CONDITIONS" provided that the policy would be void if there was concealment or fraud:

> 2. Concealment or Fraud. This policy is void as to you and any other insured, if you or any other insured under this policy has intentionally concealed or misrepresented any material fact or circumstance, made false statements or committed fraud relating to this insurance, whether before or after a loss.

In its motion, United Fire Lloyds asserted that Sopintra had admitted that she had made a Paragraph 2 misrepresentation and also committed common-law fraud because she had provided "receipts" for additional living expenses when she had not made an actual payment. It appears that she had not given a check to Mr. Phillips when she sought reimbursement of $7,725. United Fire Lloyds gave her a check for $7,725 on February 10, 2006, and she gave Mr. Phillips a check dated February 15, 2006, for that amount.

United Fire Lloyds claims that Sopintra's fraudulent act gave it the right to void the entire policy under the quoted Paragraph 2. Citing *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001), United Fire Lloyds argued the additional ground to the trial court, and argues here, that Sopintra's actions established the elements of common-law fraud aside from the quoted paragraph in the policy:

(1) the plaintiff made a representation to the defendant;

(2) the representation was material;

(3) the representation was false;

5

(4) when the plaintiff made the representation, the plaintiff

    (A) knew the representation was false, or

    (B) made the representation recklessly, as a positive assertion, and

    without knowledge of its truth;

(5) plaintiff made the representation with the intent that the defendant act on it;

(6) the defendant relied on the representation; and

(7) the representation caused the defendant injury.

In her response to United Fire Lloyds's motion for summary judgment, Sopintra claimed (and testified) that she was following the instructions of Patrick Peden, an adjuster with United Fire Lloyds, who told her "to submit her additional living expenses as receipts and to break down those expenses to smaller time periods and then [United Fire Lloyds] would pay [her] for those expenses." Therefore, the Temcharoens claimed that giving documents labeled as "receipts" was not a fraudulent misrepresentation. It appears that Sopintra believed that Peden knew that she had only incurred a liability for the additional living expenses and told her to submit them as receipts as she incurred the expenses. Sopintra also claimed that United Fire Lloyds could not and cannot show any injury.

In response to United Fire Lloyds's reliance on Paragraph 2 of Sections I and II of the policy, the Temcharoens asserted that the anti-technicality statute, Section 705.003, applied that United Fire Lloyds failed to meet the requirements of Section 705.003(b), and, therefore, that Paragraph 2 had no effect because of the statute.

*Section 705.003, the "Anti-technicality Statute"*

In their first issue, the Temcharoens argue that Section 705.003 applies and that Paragraph 2 should be given no effect. Section 705.003 reads as follows:

(a) An insurance policy provision that states that a misrepresentation, including a false statement, made in a proof of loss or death makes the policy void or voidable:

    (1) has no effect; and

    (2) is not a defense in a suit brought on the policy.

6

(b) Subsection (a) does not apply if it is shown at trial that the misrepresentation:

(1) was fraudulently made;

(2) misrepresented a fact material to the question of the insurer's liability under the policy; and

(3) misled the insurer and caused the insurer to waive or lose a valid defense to the policy.

United Fire Lloyds argues that Sopintra's misrepresentation did not invoke Section 705.003 because her submission of the receipts for the $7,725 payment was not "made in a proof of loss" as required by Section 705.003(a). United Fire Lloyds states that "[a] proof of loss is typically a formal document sworn to by the insured that verifies the insured's claim." Although accepted by the trial court below, this argument elevates form over substance.[2]

There are no cases addressing this issue under Section 705.003, which became effective April 1, 2005. There are, however, several cases under former TEX. INS. CODE art. 21.19 and the earlier TEX. REV. CIV. STAT. art. 5046, the predecessor statutes to Section 705.003, that contained substantially similar language. Those cases are instructive and support a conclusion that an alleged misrepresentation does not have to be under oath or in a formal sworn proof of loss for Section 705.003 to apply.

The early case of *Fireman's Fund Ins. Co. v. Reynolds*, 85 S.W.2d 826 (Tex. Civ. App.—Waco 1935, writ ref'd), involved former Article 5046. The insured lived in San Antonio, and she rented a house in Waco. A tenant had moved into the house on June 2, 1933, and moved out on June 28 or 29. A few hours later, the house was totally destroyed by fire. The insurance company argued that the policy by its terms became void because the house had been vacant and unoccupied on March 4, 1933, and remained so for more than ten days. At the request of the insurance company, the insured was examined under oath concerning her loss. She testified that her house became vacant on March 4, 1933, and remained in that condition until June 2, 1933. It turned out

_____

[2]The trial court's statement that "no loss had occurred" when Sopintra presented the receipts is probably correct as a technical matter; however, taking Sopintra's testimony as true, the Temcharoens had incurred a liability for the additional living expenses they had incurred to that date, and that liability would become a loss when the Phillipses received payment.

at trial that her brother had actually occupied the house during that period. The insurance company argued that her false statement rendered the policy void because her statement was made "in connection with her proof of loss." *Id.* at 828. The trial court found that the insured had not made a material misrepresentation calculated to mislead the insurance company or cause it to waive or lose any valid defense to the insured's claim. The Waco court discussed former Article 5046:

> Article 5046 of our Revised Statutes provides specifically that no misrepresentation or false statement **in proofs of loss** shall constitute any defense to a suit upon an insurance policy unless it be shown on the trial that such false statement was fraudulently made and misrepresented a fact material to liability and that the insurer was thereby misled and caused to waive or lose some valid defense. The examination of appellee in this case was within such provision of the statute. **The false statement relied on to work a forfeiture of the rights of the insured under a policy must have been willfully made and must not have resulted from inadvertence or mistake.** *Lion Fire Ins. Co. v. Starr*, 71 Tex. 733, par. 4, 12 S.W. 45 [Tex. 1888]. Our courts have uniformly required an insurer seeking to defeat liability on the ground of fraud and false swearing to fully meet the requirements of the article above quoted (emphasis added) (one citation omitted).

United Fire Lloyds attempts to distinguish the *Reynolds* case by pointing out that the insured in that case made the statement under oath whereas Sopintra did not submit the receipts under oath. That does not appear to be the defining characteristic as viewed by the *Reynolds* court. The defining characteristic was that the statement was made in connection with the insured's proof of loss, and the court gave the term "proof of loss" a common sense meaning rather than a technical one. In this case, Sopintra presented the receipts in connection with her proof of loss. United Fire Lloyds admits as much because it repeatedly asserts that she fraudulently gave it the receipts to show a loss when there was no loss.

In *United States Fire Insurance Co. v. Skatell*, 596 S.W.2d 166 (Tex. Civ. App.—Texarkana 1980, writ ref'd n.r.e.), the insurance company argued that the "anti-technicality statute," former Article 21.19, did not apply because the insured's misrepresentations occurred outside a formal proof of loss document. Skatell had sued the insurance companies to collect insurance benefits for jewelry that allegedly had been stolen from his home. The insurance company orally examined him under oath, and during the examination, he denied having any previous criminal record. Later, at another oral examination, he admitted a record of several offenses of fraud, hot checks, and theft by false

8

pretenses. The policies contained a provision that the entire policies would be void if, before or after a loss, the insured concealed or misrepresented any material fact or circumstance concerning the insurance. The court found that former Article 21.19 applied and that there was no proof that the false statements were fraudulently made, were material to the issue of liability, or caused the insurers to waive or lose any valid defense to the policies. *Id.* at 169.

In response to the insurance companies' argument that former Article 21.19 did not apply, the *Skatell* court reasoned that "[t]he examination under oath, although not a formal proof of loss, nevertheless is an elaboration upon and partakes of the nature of a proof of loss, and therefore comes within the statute even though not specifically mentioned" (citing the *Reynolds* case). The court then agreed with the Fifth Circuit's decision in *Vernon v. Aetna Insurance Co.*, 301 F.2d 86 (5th Cir. 1962), where the *Skatell* court stated:

> [I]f false statements in the more formal proof of loss will not void the policy unless they are fraudulent, material and harmful to the insurer, certainly the intent of the statute is that false statements of lesser consequence should not be allowed to void a policy unless they, too, meet such requirements.

*Skatell*, 596 S.W.2d at 169. Under the reasoning in *Vernon*, Sopintra's "lesser consequence" actions (being not under oath) in submitting the receipts as proof of her loss did not have to be under oath for her to have the benefit of Section 705.003. United Fire Lloyds should not be allowed to void the entire policy unless United Fire Lloyds proved the three elements in Section 705.003(b).

To the same effect is *Aetna Casualty & Surety Co. v. Guynes*, 713 F.2d 1187 (5th Cir. 1983). The insurance company argued that policy-holders giving false statements during an insurance company's investigation of the loss fall outside the protections of former Article 21.19 and that to avoid liability the insurer had only to satisfy the general requirements that the false statements were "willfully made with respect to a material matter and with the intention of thereby deceiving the insurer." 713 F.2d at 1190. Disagreeing, the court pointed out that the Texas Legislature had written former TEX. INS. CODE arts. 21.16 and 21.19 to cover false statements in applications for insurance or proofs of loss. The policy behind these two provisions was:

> [O]ne flatly opposed to the use of forfeiture clauses to avoid the obligations of insurance contracts solely upon a showing that the insured has made, at any time, a false statement with respect to the insurance or the subject thereof. Under the statutory scheme, only those falsehoods which are . . . material, fraudulently made,

9

and which mislead the insurer and cause it to lose some valid defense, if made after the loss occurs, may be made the basis for voiding a policy pursuant to a forfeiture clause.

*Id.* at 1191 (citing *Vernon*, 301 F.2d. at 89). We hold that Section 705.003 applies even though Sopintra's alleged misrepresentation of submitting "receipts" was not done in a formal proof of loss form. We next examine whether United Fire Lloyds met the requirements of Section 705.003(b).

The first requirement under Section 705.003(b) was that Sopintra's action had to be fraudulent. As we noted earlier, the *Reynolds* court in 1935 recognized that Texas law required that a false statement relied on to work a forfeiture of the rights of the insured under a policy "must have been willfully made and must not have resulted from inadvertence or mistake." *Reynolds*, 85 S.W.2d at 829. Because this is an appeal from a summary judgment, we have to view Sopintra's testimony as true. Her testimony was that Peden, the adjuster for United Fire Lloyds, told her to submit her additional living expenses as receipts to be paid. Her testimony presented a fact question. Whether her submission of the receipts was an innocent misunderstanding of Peden's instructions or an intentionally false statement depends on the credibility of the witnesses. She continued to fax the Phillipses' receipts to United Fire Lloyds and stated in her cover page that she was sending an invoice. Those actions could indicate an innocent misunderstanding. Reasonable and fair-minded jurors could differ in their conclusions in light of the evidence and all of the other evidence presented.

The endorsement to the Temcharoens' policy provided that United Fire Lloyds would cover the following:

> a. additional living expense, meaning reimbursement of any necessary and reasonable increase in living expense you incur so that your household can maintain its normal standard of living.

If Sopintra read the policy, which we do not know, she may have focused on "expense you incur" rather than the term "reimbursement." She may not have read the policy. Cancellation of their entire policy, a policy that primarily was for damages to their house, should not be summarily done. There is a genuine issue of material fact that precluded summary judgment.

Section 705.003(b)(3) required United Fire Lloyds to prove that Sopintra's "misrepresentation" caused it to waive or lose a valid defense to the policy. Both the Fifth Circuit

10

and the Fourteenth Court of Appeals have interpreted the phrase "loss of an otherwise valid defense" to mean that a defense is lost, in the context of former Article 21.19, when it has been abandoned or compromised in such a way that it can no longer be presented or litigated. *Guynes*, 713 F.2d at 1192; *Stokes v. State Farm Lloyds, Inc.*, No. 14-95-01094-CV, 1997 WL 96608, at *3 (Tex. App.—Houston [14th Dist.] 1997) (not designated for publication). United Fire Lloyds has not demonstrated how Sopintra caused it to waive or lose a valid defense to the policy. In paying $7,725, United Fire Lloyds did not lose a defense to the policy. If Sopintra did not actually incur those additional living expenses, that matter can be litigated.

United Fire Lloyds motion for summary judgment did not satisfy the requirements of Section 705.003(b). The Temcharoens' first issue is sustained.

*Misrepresentation or Common-Law Fraud*

In their second issue, the Temcharoens argue that the trial court erred in granting United Fire Lloyds summary judgment on the ground of common -law fraud. Although United Fire Lloyds refers to its second affirmative defense as common-law fraud, the defense is more commonly described as the defense of misrepresentation to a breach of contract action when it is an insurance contract. Because there are fact questions, we hold that the trial court could not grant summary judgment on this ground. United Fire Lloyds did not establish as a matter of law that Sopintra intended to deceive it.

In *Union Bankers Insurance Co. v. Shelton*, 889 S.W.2d 278 (Tex. 1994), the supreme court held that an intent to deceive must be proved to cancel a health insurance policy within two years of the date of its issuance when the cancellation is based on the insured's misrepresentation in the application for insurance. The supreme court cited and relied on numerous Texas cases that it said stand for the following proposition:

> [I]n Texas, an insured's intent to deceive must be shown in order for an insurance company to successfully raise a defense of misrepresentation on the basis of a false statement made by the insured in the application for any type of insurance [policy].[3]

*Shelton*, 889 S.W.2d at 282.

_____

[3]Two years earlier, the Fifth Circuit explained that a common-law misrepresentation defense under Texas law requires a showing that the misrepresentation was made willfully with the intent to deceive or to induce the insurance company to issue the policy. The court noted that even a material misrepresentation does not defeat recovery if it is made innocently and in good faith. *Enserch Corp. v. Shand Morahan & Co.*, 952 F.2d 1485, 1496-97 (5th Cir. 1992) (involving professional services policies relating to the Washington Public Power Supply System nuclear power project).

Although United Fire Lloyds referred to the elements of common-law fraud as stated in *FirstMerit Bank*, that case involved fraud in the defense of inducement to an arbitration agreement. To void an insurance policy for misrepresentation, the supreme court has held that the insurer must plead and prove the following: (1) the making of a representation; (2) the falsity of the representation; (3) reliance on the misrepresentation by the insurer; (4) the intent to deceive on the part of the insured in making the misrepresentation; and (5) the materiality of the misrepresentation. *Mayes v. Mass. Mut. Life Ins. Co.*, 608 S.W.2d 612, 616-17 (Tex. 1980) (holding that fraudulent intent was not established as a matter of law); *see Garcia v. John Hancock Variable Life Ins. Co.*, 859 S.W.2d 427 (Tex. App.—San Antonio 1993, writ denied). In *Garcia*, the court held that the trial court had erred in granting summary judgment because the insurer failed to establish as a matter of law that the insured intended to deceive the insurer when he made misrepresentations in his applications for life insurance. *Garcia*, 859 S.W.2d at 431. We see no reason to treat misrepresentations in connection with health or life insurance policies differently from misrepresentations in connection with property insurance policies.

We also see no reason to differentiate between a misrepresentation in an application for insurance and a misrepresentation in connection with a proof of loss in a policy of the type before us. In both cases, the insurance company is attempting to declare the entire policy void. United Fire Lloyds did not prove as a matter law for summary judgment that Sopintra had an intent to deceive. There are fact questions concerning whether the "receipts" were fraudulent as required under Section 705.003(b) or as the "intent to deceive" element of a misrepresentation or common-law fraud defense.

The false statement relied on to work a forfeiture of the rights of the insured under a policy must have been willfully made and must not have resulted from inadvertence or mistake. The record does not establish as a matter of law that Sopintra intended to deceive United Fire Lloyds. Sopintra continued to fax "receipts" with a cover page stating that she was sending an "invoice." We sustain the Temcharoens' second issue. We need not reach their other issues.

12

*This Court's Ruling*

The summary judgment of the trial court is reversed, and the cause is remanded for a trial on the merits.

TERRY McCALL

JUSTICE

July 23, 2009

Panel consists of:  Wright, C.J.,
McCall, J., and Strange, J.